Iowa Railway & Light Corporation, Appellant, v. J. L. Lindsey, County Engineer, Appellee.

No. 39893.

June 23, 1930.

Rehearing Denied December 13, 1930.

*Graham & Osborn,* for appellant.

*John Fletcher,* Attorney-general, *Maxwell O'Brien,* Assistant Attorney-general, and *W. E. S. Hutcheon,* County Attorney, for appellee.

ALBERT, J.—The plaintiff is an Iowa corporation, engaged in the business of generating, transmitting, distributing, and selling electricity for light, heat, and power purposes. It filed a petition with the board of railroad commissioners for a franchise to construct a 6,600-volt transmission line on a highway in Greene County. The petition, as required by law, was accompanied by certain specifications as to material, manner, and method of construction, which provided, among other things, for a 6-foot and 7-inch cross arm on the poles, for the purpose of carrying wires conducting electrical energy. There is no question as to the regularity of this proceeding, which resulted in the granting of the prayer of the petition of the defendant and the issuing of a franchise accordingly, which, so far as material, reads as follows:

"This franchise is issued and permission and authority thereunder are hereby granted unto the above-named Iowa Railway & Light Corporation to erect, maintain and operate a 6,600-volt line for the transmission, distribution, use and sale of electric current outside cities and towns, and for such purpose to erect, use and maintain poles, wires, guy wires, towers, cables, conduits and other fixtures and appliances necessary for conducting electric current for light, heat and power over, along and across any * * * highways, along a road particularly described as follows:" (Here follow a description of the highway along which this line was to be built, and also a designation on

which side of the highway the line was to be constructed, the length of the line being approximately 5½ miles.)

The franchise further provides that it is subject to the provisions, conditions, and requirements of Chapter 383, Code, 1924, and to all of the provisions, rules, and regulations of the board of railroad commissioners as now exist or may be hereafter ordered or required, and the board of railroad commissioners is to retain jurisdiction and may at any time make such further orders and regulations as may be necessary, and as said board may authorize by law.

The county engineer designated the location of the poles of this line at a point one foot from the line which marks the boundary between the highway and the adjoining property. The plaintiff was constructing, or starting to construct, its line by placing poles at a point four feet from the line between the highway and the adjoining property.

Some elementary principles in relation to this matter are well settled. Primarily, the right to establish, regulate, and control highways rests in the state. It is equally true that the state has the right to delegate such powers to boards, commissions, public or municipal corporations. Originally, these rights were all delegated to the boards of supervisors of the respective counties of the state, but later, the power of the boards of supervisors respecting the construction and maintenance of primary roads was vested in the state highway commission. Chapter 101, Section 8, Acts of the Forty-second General Assembly.

No one would dispute the proposition that the primary purpose of establishing and maintaining highways is for the benefit of the general traveling public; but whether the highways are those established by direct act of the legislature, as they were in the early history of the state, or by bodies or commissions or corporations authorized so to do by the state, it (the state) yet has a reserve right over the whole subject, by which it may enlarge, reduce, or take away any powers thus conferred. The legislature of this state has seen fit, in the exercise of this right, to grant to telegraph and telephone companies the right to construct their lines upon the highways within the state, and this power has been enlarged to include electric transmission lines. With the wisdom of this legislation (allowing highly charged

electric lines to be constructed upon the highway) we have no concern, as that rests within the sound discretion of the legislature. The legislature later created a board of railroad commissioners, and conferred upon it the power of determining whether or not high-tension transmission lines should be placed upon any of the highways of the state. The board is given a discretion to determine this question, and their determination is final, unless appealed from. See Section 7874, Code, 1924, where the board of railroad commissioners is given ''general supervision of * * * all lines for the transmission, sale, and distribution of electrical current for light, heat, or power, except in cities and towns.''

Under Section 8309, Code, 1924, all such companies are prohibited from erecting, maintaining, or operating any of these lines without first procuring a franchise.

As provided by Chapter 383, Code, 1924, they acquire this franchise by the filing of a petition, in conformity with Sections 8310 and 8311. Upon the filing of this petition, the railroad commissioners are required to fix a date, and to publish notice to the citizens of each county through which the proposed line or lines will extend.

Section 8313 provides that ''any person, company, city, town, or corporation whose rights or interests may be affected, shall have the right to file written objections to the proposed improvement or to the granting of such franchise,'' and that, after being fully advised in the matter, the board of railroad commissioners ''may grant such franchise in whole or in part upon such terms, conditions, and restrictions, and with such modifications as to location and route as may seem to it just and proper.''

It is obvious, therefore, from this enactment that the board of railroad commissioners has the power to grant the franchise, specifying the terms, conditions, and restrictions thereof, and designating the location and route of these lines, as they may deem just and proper. Any person is given the right to appear before the board on such hearing, and file written objections to the proposed improvement or the granting of such franchise. No objections appear to have been made in the instant case, and we turn to the requirements of the statute as to what was legally included in the franchise.

Section 8310 says, among other things, that they may peti-

tion for ''a franchise, to erect, maintain, and operate a line or lines for the transmission, distribution, use and sale of electric current outside cities and towns and for such purpose to erect, use and maintain poles, wires, guy wires, towers, cables, conduits, and other fixtures and appliances necessary for conducting electric current for light, heat, or power over, along, and across any public * * * highways.'' It is quite apparent, therefore, from this section that the franchise covers more than simply the line of poles, because it so specifies in terms. It follows necessarily, therefore, that the board of railroad commissioners had the power to grant this franchise for the erection of this transmission line, and upon the terms, conditions, restrictions, and limitations therein set out. It also had power to designate the route and location of this line which it did.

It is provided in Section 8313 that the board of railroad commissioners may examine the proposed route, or cause an engineer selected by it to do so, and it may grant such franchise, in whole or in part, upon such terms, conditions, and restrictions, and with such modifications as to the location and route as may seem to it just and proper; and such franchise, according to Section 8314, shall be subject to such rules, not inconsistent with the statute, as the board of railroad commissioners may establish from time to time.

By Section 8318 the board is required to keep a record showing all franchises granted, and to whom issued, with a general statement of the location, route, and termini of the line or lines covered thereby.

It is to be noticed that this chapter of the Code (383) is headed ''Electric Transmission Lines,'' and from a study of all of the sections it is apparent that they all purport to deal with electric transmission lines.

Chapter 174, Acts of the Thirty-fifth General Assembly (Sections 2120-n to 2120-t, inclusive, Code Supplement, 1913), was approved April 11, 1913, and published April 16, 1913. Many of the electric lines in the state were built and operated before 1909, when the board of supervisors was given power to locate these lines.

A state highway commission was created by Chapter 122, Acts of the Thirty-fifth General Assembly, and Section 18 thereof (Section 1527-s17, Code Supplement, 1913), provides, among

other things, that the "county and township boards, charged with the duty of improving public highways, shall have power to remove all obstructions in the highways under their jurisdiction, but fences and poles used for telephone, telegraph or other transmission purposes, shall not be removed until notice * * * to the owner," etc. It further provides that "any new lines, or parts of lines hereinafter constructed, shall be located by the engineer." This act was approved April 3, 1913, and published April 9, 1913.

As between these two acts, it is apparent that both were passed by the same general assembly, but the act conferring the powers upon the railroad commissioners was the later expression.

By Chapter 410, Acts of the Thirty-seventh General Assembly, the former act, Section 1527-s17, Code Supplement, 1913, with reference to location by the engineer, was amended, by adding thereto a provision that written application should be filed with the county auditor, describing the highways upon which such lines, or parts of lines, were to be constructed, etc.

It might be noted, in passing, that this section of the statute (now appearing as Section 4838, Code, 1924), is related to Sections 4834, 4835, 4836, and 4837, all of which deal with and refer to transmission lines.

The real contention in this case is whether or not the county engineer had the right to disregard all the rights acquired by this electric company under its franchise from the board of railroad commissioners, and to locate the poles of this transmission line so that a part of the construction will overhang adjoining land; or can the two statutes be so construed as to reach a harmonious result? If not so, which shall govern?

Much testimony was introduced on both sides relative to the wisdom and expediency of the location of this electric line at the point designated by the county engineer; but, as we view the question, this is wholly immaterial. Many of the matters now made the basis of justification for putting this line within one foot from the fence are matters which, if material, should have been raised by objection when the matter was on for hearing before the board of railroad commissioners, and are not available to defendants in this proceeding.

One of the inducements which led the legislature to grant

the right to construct these public utilities on the highways was undoubtedly the fact that it saved them the expense of condemning and paying for a right of way for their lines, and by so doing, made the purchase price of electric current less to the public than it would be, were the companies compelled to expend vast sums in acquiring a right of way for their improvements.

A careful reading of all of the statutes touching upon this proposition shows that the subject dealt with is electric transmission lines. It goes without saying that the term "transmission lines" consists of more than poles, and the very wording of the statute above quoted shows that the legislature contemplated, in the use of this term, not only the poles, but the wires, guy wires, towers, cables, conduits, and other fixtures and appliances necessary for conducting electric current. As a part thereof, these poles carry cross arms over 6 feet in length, which, of course, would extend over 3 feet on either side of the center of the pole which supports them. The specifications filed with the railroad commissioners show this manner of construction, and the same were approved by them, and authorization for such construction was included in the franchise. The legislature empowered the railroad commissioners to authorize the construction of these electric transmission lines on the highway, and we can reach no other conclusion than that, when the railroad commissioners granted the franchise, the plaintiff thereby derived authority from the legislature to place all of its lines within the boundary of the highway. It would be no authority whatever for them to so construct their line that part of the same overhung the adjoining property. We think this is perfectly clear under the statute with reference to the power of the railroad commissioners, and they were acting wholly within their jurisdiction when they so authorized the construction of this electric transmission line on this highway. We are re-enforced in this conclusion by the exact wording of the statute (Section 8309, Code, 1924), which uses the words "over or across any public highway or grounds outside of cities and towns."

Section 8310 provides for the asking of a franchise for constructing these lines "over, along, and across" any public highway. Section 8311 requires "a general description of the public * * * highways * * * over, across, or along which any proposed line will pass." Section 8312 provides for a notice which

shall give "a general description of the lands and highways to be traversed by the proposed line or lines." Section 8313 provides for the duty of the board and for the issuance of a franchise granting in whole or in part "upon such terms, conditions, and restrictions, and with such modifications as to location and route as may seem to it just and proper." Section 8316 prohibits this franchise from giving exclusive right to any person, etc., "to conduct electrical energy, or to place electric wires, along or over or across any public highway or public place or ground." Under Section 8318, the railroad commissioners are required to keep a record, and, among other things, a general statement of the location, route, and termini of the transmission line or lines covered by the franchise.

It is obvious from the statutes, therefore, that the legislature has dealt with this question of electric transmission lines as an entity, treating the poles, cross arms, wires, guy wires, etc., as constituting the "line;" and secondly, it intended, and in fact says, that the board of railroad commissioners may authorize the construction of a line upon a highway. To our minds this means but one thing: that is, the whole of the line, together with the necessary structure and attachments, is to be placed within the confines of the highway.

It is urged that a certain method of construction, which the defendant claims is impracticable, could be made, by which the whole of the line would be within the confines of the highway. This question is wholly beside the issue, because the railroad commissioners authorized the method of construction which is being carried out by the company, and we are not concerned with some possible construction other and different from that which is authorized by them. This question might have been raised before the railway commission, but is immaterial here.

It is insisted, however, that, because of Section 4838 of the Code, the county engineer, notwithstanding the order and franchise granted by the railroad commissioners, has the power to locate this line at such a place on the highway as he sees fit; and in the instant case, he located the pole line at a point one foot from the boundary of the adjoining property. A corporation, like a human being, cannot be expected "to obey two masters," especially where there seems to be a conflict between their rights and powers. It would appear from Section 4838 that, when new

lines are constructed, the county engineer has the right to locate the same on the highway. Apparently, therefore, there is a conflict between the power of the county engineer and that of the railroad commissioners. As shown in the record, the railroad commissioners went no further, however, than to indicate on which side of the highway the line was to be constructed; and we believe that both sections of the statute may be given force and effect by saying that the railroad commissioners did locate the line on a certain highway. Subject to this location, the county engineer has the right to designate where it shall be placed on the highway, limited, however, to so placing the line that all of it, including the superstructure, shall be within the boundary line of the highway. Any other construction of these two sections of the statute would put it wholly within the power of the county engineer to make nugatory the orders of the railroad commissioners.

We turn now to the facts in the case. The conceded facts are that, if this transmission line, as located by the railroad commissioners, is constructed in accordance with the orders made by the county engineer, not all of the electric transmission line will be within the boundaries of the highway, but a part of it will overhang adjoining property. We think it is the right and duty of the electric company to so construct its line on the highway that its structure and superstructure shall all be within the boundary of the highway. In the instant case, the boundary of the highway is 33 feet from the center line thereof. Under this situation, and to the end that the whole of the transmission line may be within the boundary of the highway, the center of the poles carrying the superstructure cannot be closer than one half the length of the authorized cross arms to the boundary line of the highway. It may be, as suggested by counsel, that these poles and lines on the highways are a nuisance, and produce inconvenience to those in charge of the highways; but that is not a matter for our consideration. The legislature has authorized them to be there, and whatever it authorizes cannot be considered a nuisance.

The testimony shows that the county engineer was advised that this line was to be constructed along the highway in controversy. He stated that he designated the line not closer to the center line of the highway than one foot from the right-of-

way line. There seems to have been no dispute whatever as to the location of this line on the highway, except a disagreement as to whether it was to be one foot from the fence line or four feet therefrom. This is the real and the only question of contention in this respect between the parties.

Finally, it may be said that one of the duties of the railroad commissioners in considering the application for this franchise was to determine whether or not transmission lines would interfere with the public use of the highway. This was a prerequisite to the allowance of the franchise, and was a determination that, at the time, the condition and use of such highway were such that the erection of this transmission line would in no way obstruct the public use thereof.

As we have just suggested, one of the questions decided by the board of railroad commissioners was that the construction of this line would not interfere with the public use of the highway, and this determination was made September 16, 1927. The record as a whole is barren of any evidence whatever to show that there was any change in the condition or any increased demand on the part of the defendant or of the public for the use of this highway between the time the franchise was granted by the railroad commissioners and the time of the trial of this case. The decision of the railroad commissioners, therefore, is controlling on this question.

The fact, if it be a fact, that, in the onward march of commerce, conditions may arise in the future under which a larger use of the highways demands the further removal of these poles, or their entire removal from the highways, under existing statutory power or under future legislation under the reserve power of the state, is a question with which we are not now concerned. It will be time enough to cross the bridge when we get to it.

To the end that this opinion may not be misunderstood, we will say that the power of the county engineer to fix the location of the line on the highway is limited as above specified; but, aside from this limitation, he has complete control of the location of the line upon the highway. Local conditions arise which require him to use his judgment as to placing a line, because of culverts, cattle crossings, private ways, drainage, and other conditions which exist on the highways which would require a change in the location of the line to meet such existing condi-

tions. These powers, of course, the county engineer has, and is authorized to exercise. Local conditions may be such that the lines should be in closer proximity to the highway than above specified. In other words, the question of where the line shall be on a given side of a highway is wholly within the control of the county engineer, except that he must so place it that not only the poles, but all of the wires, guys, superstructure, etc., shall be within the confines of the highway.

As a final word, it will be noted by common observation that, in many instances, both in cities and in the rural districts, large conduits are being buried in the ground for the purpose of carrying wires of telegraph, telephone, or electric lines. If the rule were as claimed by the defendant in this case, then it would be within the power of the local engineer to require that one half or more of such conduits should be constructed on the land adjacent to the highway; and if he had power to order such construction, it would logically follow that, if he allowed one inch of said conduit to be upon the highway and the remainder upon the adjoining land, it would be a full compliance with the law. This would be true even though the conduits were placed, as they are, wholly under ground, so that there could be no possible interference with the use of the surface of the highway by the public for travel or otherwise. As herein expressed, we cannot agree with any such narrow construction of the statute.

The district court erred in entering a decree contrary to the construction of the statute placed upon it by this opinion. It should have awarded the relief prayed by the plaintiff.—*Reversed.*

FAVILLE, DE GRAFF, KINDIG, and GRIMM, JJ., concur.

STEVENS, EVANS, MORLING, and WAGNER, JJ., dissent.

STEVENS, J. (dissenting).—The error of the majority in this case appears to me fundamental. The opinion is predicated upon premises which contravene what would seem to be the clear purpose and intent of the legislature. The primary and first right to the use of the highways is in the public. This right is not subordinate to the claim or privilege for permissive use by any person or entity. As was said in substance by Mr. Justice

Wagner, in *Central States Elec. Co. v. Pocahontas County* (Iowa), 223 N. W. 236 (opinion withdrawn), the highways are established and maintained for the benefit of the public, from side to side and from end to end. *Lacy v. City of Oskaloosa,* 143 Iowa 704; *Quinn v. Baage,* 138 Iowa 426; *Perry v. Castner,* 124 Iowa 386.

The opinion of the majority, in terms, recognizes the principle, but, in practical effect, subordinates it to the mere permissive right of a franchise holder. The assumed extent and scope of the franchise granted appellant to erect its transmission line in the public highway are so emphasized as to make them the controlling factor in the case. Permissive rights or privileges granted to utility companies in the use of public highways are always to be construed most strongly in favor of the public. *In re Application of Russell,* 163 Cal. 668 (126 Pac. 875). The opinion of the majority proceeds on the opposite theory.

It is quite inconceivable that the legislature, in the enactment of the statutes applicable to this case, intended to in any way subordinate the public welfare to the benefit of individuals or corporations desiring to operate electric transmission lines upon the public highway. Every provision of the statute touching the subject-matter of this discussion clearly and unmistakably sustains the right of the public. The authority conferred upon the railroad commission to grant to owners of electric transmission lines a privilege or franchise to erect their poles and other equipment upon the public highway is not exclusive. The same power, and by the same section of the statute, Section 8309, Code, 1927, is conferred upon boards of supervisors. The power conferred upon these respective bodies is identical, and is to be exercised in the same way. Section 8309 opens with a prohibition against the right of persons or companies to erect transmission lines on the public highway, again emphasizing the superior right of the public. The very purpose for which Chapter 383 was enacted was to provide all necessary safeguards for the protection of the public highways. It was the obvious legislative purpose and intent that nothing should be permitted thereon that would interfere with the free unobstructed use thereof. The form of the franchise to be granted, whether by the railroad commission or board of supervisors, is to be prepared by the commerce counsel. The commerce counsel

is a public officer charged with the duty of interpreting the statutes so as to give effect to the legislative intent. There is neither word nor clause in any provision of the Code which gives authority to the railroad commission to designate the location of transmission lines at a particular place upon the highway, nor is there any conflict in the statutes at this point. This duty, under Section 4838 of the Code, is to be performed by the county engineer, if there be one; otherwise, by the board of supervisors of each respective county. Under the language of this statute,—''New lines, or parts of lines hereafter constructed, shall be located by the county engineer upon written application filed with the county auditor and shall thereafter be removable according to the provisions of this chapter. If there be no county engineer, the board of supervisors shall designate said location,''—the power here conferred is absolute. It is the only power conferred upon any body or person to designate the location of the line. If statutes are to be construed most favorably to the public, then full scope and extent must be given to the authority conferred by the legislature upon the engineers and boards of supervisors. The county engineer does not exercise his power in contravention of any authority conferred upon the railroad commission, but solely in the exercise of a right specifically conferred by Section 4838 of the Code, and in compliance with the duty thereby imposed upon him. The grant of a franchise by the railroad commission carries with it no right or power upon the part of anyone to interfere with the exercise by the county engineer or the board of supervisors of their statutory powers and duties. The duty and authority of the railroad commission and those of the county engineer are separate and distinct, and both originate in legislative enactments. The power conferred upon the county engineer, or, in his absence, upon boards of supervisors, to designate the location of the line, is in strict harmony and keeping with other duties imposed upon county and township officers.

Section 4840, Code, 1927, is as follows:

''It shall be the duty of all officers responsible for the care of public highways, outside cities and towns, to remove from the traveled portion of the highways within their several jurisdictions, all open ditches, water breaks, and like obstructions, and

to employ labor for this purpose in the same manner as for the repair of highways.''

This statute imposes the duty upon officers responsible for the care of the public·highways of maintaining the same free of obstructions. It confers an absolute duty upon certain officers, and imposes no limitations upon them in the performance thereof. As a further indication of the legislative purpose and intent to maintain authority in boards of supervisors and township trustees to maintain the public highways free of obstruction, the specific duty is imposed upon them by Section 4834 to ''cause all obstructions in highways under their jurisdiction to be removed.'' The sole limitation emphasized is that poles used for telephone, telegraph, or other transmission purposes shall not be removed until notice in writing of not less than 30 days has been given to the owner or company operating such lines. In case of fences, the notice must be in writing, of not less than 60 days. It is also provided by Section 4837 of the Code that all fences and poles shall, within the time named, be removed to such line on the highway as the county engineer may designate; or, if there be no county engineer, then the board of supervisors shall fix the location. If the obstruction is not removed within the time fixed in the notice, the public authorities are authorized to move them forthwith. New lines constructed under a franchise granted by the railroad commission are, by specific provision of Section 4838, made subject to the same rules and authority of the public officers to remove such lines to a different location, designated by the county engineer or the board of supervisors. The state has not undertaken to subordinate the use of its public highways to certain permissive uses which the railroad commission and board of supervisors are authorized to grant to individuals or corporations. The only part of electric transmission lines in any way entering the public highway are the poles and guy wires. The state has not undertaken either to grant or procure an absolute franchise for telephone, telegraph, or electric companies to erect and maintain transmission lines throughout the state. It has given the permissive use of the public highways upon certain conditions, so far as such use may not interfere with the higher right of the public. If the franchise is inadequate to meet all of the requirements of the

franchise holder, when exercised in accordance with the law, then it is up to the company to make such further arrangement as may be required. Suppose application were made to a board of supervisors for a franchise, would not the statute, which imposes certain duties upon such officers to keep the highways free from obstructions, be binding upon such board, as it would be under any other circumstances? The same board that might be called upon to grant a franchise might also be charged with the additional statutory duty to locate the line. In the performance of such duty, it might find itself in some embarrassment to know which statute to observe. The authority of the railroad commission in granting a franchise for the purpose under consideration is limited by other statutes, in the light of which it must be construed. It is not plenary, and guarantees only the right of the applicant to use such portion of the public highway as is not demanded or necessary for the use of the public. Just what portion is necessary and what will constitute an obstruction in the road are to be determined by the officers designated by the statute to perform that duty. The railroad commission does not, in exercising the authority conferred, determine just how the line shall be constructed. Section 8311 requires certain things to be stated in the petition, for the information and advice of the commission. The matters referred to aid the commission in determining whether or not it will grant the franchise petitioned for, but, when it is granted, do not determine the exact method of construction. When we give effect to the several applicable statutes, the conclusion of the majority cannot, in my opinion, be upheld.

I am authorized to say that Justices EVANS, MORLING, and WAGNER concur in this dissent.