75 N.W.2d 346 (1956)
L. J. LITCHFORD and Ronald T. Schaefer, Appellees,
v.
IOWA-ILLINOIS GAS AND ELECTRIC COMPANY, Appellant.
No. 48850.
Supreme Court of Iowa.
March 6, 1956.
Rehearing Denied May 14, 1956.
Ries & Osmundson, Iowa City, and Barnes, Wadsworth, Elderkin & Locher, Cedar Rapids, for appellant.
Messer, Hamilton and Cahill and D. C. Nolan, Iowa City, for appellees.
WENNERSTRUM, Justice.
Plaintiffs' action is at law. They seek damages as the result of injuries received by one of them when a paint spray gun held by the injured party was near to or touched an electric line constructed by the defendant on the farm property of William Heiber. The case was tried to a jury which returned a verdict for the defendant. Plaintiffs filed a motion for new trial. It was sustained. The defendant has appealed.
L. J. Litchford, one of the plaintiffs, was the individual who was injured. He might be termed the primary plaintiff. Ronald T. Schaefer, the other plaintiff, at the time of the commencement of the suit was a student at the University of Iowa. His home is in Rockford, Illinois. He received from Litchford an assignment of two per cent of Litchford's claim. The defendant is an Illinois corporation.
Litchford met Leonard Wells in or near Iowa City. The latter is a painting contractor who was then operating in Johnson County. Wells taught Litchford and an associate, one Nichols, to use a paint spray gun and they were instructed to observe electric lines when painting farm buildings. They were also advised concerning transformers installed on farm properties and *347 knew higher voltage was carried on an electric line before it reached the transformer than beyond it.
The defendant company, prior to the accident, had constructed and maintained a distribution and transmission line from Iowa City to the town of Morse by virtue of a franchise issued to it by the State Commerce Commission. Section 489.1, 1950 Code. The line extended to and passed the Heiber farm and carried 4800 volts. From the transmission line in the highway an extension line was constructed for approximately 35 rods along a lane and over the Heiber farm property to the residence and farm buildings. This construction was by reason of an agreement entered into by the land owner and the defendant company on December 12, 1949. It was therein in part provided: "1. The party of the second party (defendant company) will construct, maintain, and own an electric distribution line, hereafter called `extension', including adequate transformer capacity not to exceed 5 KVA per customer, service lines, and meters, * * *; except it is understood and agreed that when such premises are located away from the highway on which the rural extension line is located so as to require a service longer than 150 feet from said extension, the customer served on such premises will provide and maintain at his own expense all the necessary poles, lines, wires and other necessary facilities from the highway to his premises which is in excess of 150 feet. The extension herein referred to is to be located along the highway as indicated on the blue print attached hereto and made a part hereof. All of the extensions and facilities herein contemplated to be constructed, maintained and owned by the party of the second part, without any right, claim or demand of any of the parties of the first part herein."
The accident took place on the Heiber farm. The line to the buildings served was in excess of 150 feet mentioned in the agreement. The distance from the machine shed, where Litchford was injured, to the highway in front of the farm is slightly less than 600 feet. It should be stated there is no claim by any of the parties herein of any liability on the part of William Heiber. The shed was located at a point on the lane closer to the highway than the transformer and the ridge of it was approximately 15 feet from the ground. The transformer was located on a pole approximately 50½ feet beyond this building. There are two wires extending from the highway and along the lane to the residence and farm buildings and the wire nearer the ridge of the shed was approximately six feet above the south end of it.
The plaintiffs' petition was filed in three counts. Count one alleged: under the provisions of section 489.15, 1950 Code, the defendant company was legally liable and responsible for the accident and resulting injury and damages sustained by L. J. Litchford. Count two was based on specific allegations of negligence and count three incorporated the theory of res ipsa loquitur. The trial court submitted the case to the jury alone on count two of the plaintiffs' petition.
I. Chapter 489, 1950 Code, is entirely concerned with electric transmission lines, the granting of franchises by the state commerce commission for the erection, maintenance, and operation of them, and the right of eminent domain by companies granted a franchise. Section 489.15, 1950 Code, referred to in count one of plaintiffs' petition is of particular import in this litigation and is as follows: "In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof. Such presumption shall not exist in favor of employees of the person or corporation operating said transmission line who are charged with or engaged in the construction, reconstruction, repair, or maintenance thereof, unless otherwise provided by the employers liability and workmen's compensation laws of the state."
In our disposition of this case we do not deem it necessary to set forth the circumstances *348 which resulted in Litchford's injuries or to comment on the extent of them. It is sufficient to state the burns received by him were of such a nature as to necessitate the amputation of a portion of the left forearm.
In its written ruling on the motion for a new trial the court stated at the time of the trial it had refused to submit count one of plaintiffs' petition. This is the count wherein section 489.15, 1950 Code is referred to and which pertains to the presumption of negligence on the part of an owner of a transmission line. The trial court further stated in its ruling it had ruled favorably to the plaintiffs, as is shown by the record, in considering this code section earlier on an application for adjudication of points of law.
In passing on the question whether the trial court erred in sustaining the motion for a new trial on the grounds count one of the plaintiffs' petition should have been submitted to the jury we necessarily must give consideration to the effect of the court's prior ruling on defendants' application for adjudication of points of law. 58 I.C.A.Rules of Civil Procedure, rule 105.
In its application the defendant maintained section 489.15, 1950 Code, applies only to, " * * * transmission lines running `along, over or across any public highway or grounds outside of cities and towns' as provided in section 489.1 * * * ". It is also therein contended the electric line by which Litchford was injured passed over the private property of William Heiber and the code section in question is not applicable to lines erected and maintained over private property.
Rule 105, R.C.P. is as follows: "The court may in its discretion, and must on application of either party, made after issues joined and before trial, separately hear and determine any point of law raised in any pleading which goes to the whole or any material part of the case. It shall enter an appropriate final order before trial of the remaining issues, adjudicating the point so determined, which shall not be questioned on the trial of any part of the case of which it does not dispose. If such ruling does not dispose of the whole case, it shall be deemed interlocutory for purposes of appeal." (Italics supplied.)
It will be observed the order pertaining to the adjudication of the law points constitutes a final order, " * * * which shall not be questioned on the trial of any part of the case of which it does not dispose. * * * " In Cook's Iowa Rules of Civil Procedure, page 701 there is set forth the advisory committee's comment which refers to the finality of separate adjudication of law points under the foregoing rule. In the author's comments reference is also made to the finality of such a ruling. In Hubbard v. Marsh, 239 Iowa 472, 474, 32 N.W.2d 67, we commented on this rule and the manner in which an appeal could be taken when an adjudication of points of law was involved. Inasmuch as there was no appeal in the manner suggested in the cited case the trial court's order and ruling in the instant one became final for the purpose of the trial and should have been followed.
The order made by the trial court on its adjudication of points of law was a finality and the trial court could not change its ruling on this point and thereby refuse to submit the theory of the applicability of section 489.15, 1950 Code, as set forth in count one of the petition. And in so changing its ruling it committed error which would justify the granting of a new trial. Although the trial court did not comment upon the finality of its prior order in sustaining the motion for new trial we hold by reason of the foregoing there was no error on the part of the trial court in sustaining it.
We therefore affirm.
Affirmed.
LARSON, C. J., and BLISS, GARFIELD, SMITH, HAYS and PETERSON, JJ., concur.
*349 LARSON, C. J., and OLIVER, GARFIELD, SMITH and PETERSON, concur specially.
OLIVER, Justice (concurring specially).
I agree the failure to submit to the jury Count I of plaintiffs' petition was error which required the granting of the new trial. But I would base the holding, not only upon the finality of the ruling and order under Rule 105, Rules of Civil Procedure, but also upon the merits of that ruling and order.
Defendant's application for adjudication of the point of law raised by the answer, stated:
"Count I of plaintiffs' petition is based upon section 489.15 of the 1950 Code of Iowa. Said section is not available to plaintiffs for the reason that the injury complained of allegedly was received on the private property and farmstead of one William Heiber, and said injury was allegedly received by coming in contact with an electric line as it passed over the private property of said Heiber. Said section 489.15, applies only to transmission lines running `along, over or across any public highway or grounds outside of cities and towns', as provided in section 489.1, and is not applicable to lines erected or maintained over private property.
"Said Count I of plaintiffs' petition, relying solely upon the presumption created by section 489.15, does not as a matter of law state a claim on which any relief can be granted."
The trial court made the following order:
"Defendant's application for adjudication of law points * * *, having been heretofore orally argued by all counsel, the matter is determined as follows:
"Statements made by counsel at the time of argument of said application and answer of defendant to plaintiff's interrogatory No. 12, establish the fact that the electrical energy from the high voltage line of defendant from the public highway into and over the property on which the alleged accident occurred had not been reduced by any transformer at the point where the alleged accident took place. The voltage power was the same as that passing over the wires of defendant on the public highway.
"It is the opinion of the Court that it was not the intention of the legislature (nor does the wording of the statutes involved so indicate) to protect from injury by transmission of electrical current only persons on the public highways over which the electrical company has a franchise, but such statutes have a much broader purpose of protecting persons or property wherever they may be, from the subtle and dangerous hazards of electrical energy.
"The court holds that plaintiff, upon establishment of the facts pleaded, is entitled to the presumption accorded him under section 489.15 of the Code."
Thereafter the case was tried. When both sides had completed their evidence and had rested, the trial court announced it would not submit to the jury Count I of plaintiffs' petition, which was based upon the presumption provided by Code section 489.15. This was directly contrary to the ruling and order under R.C.P. 105 made by the trial court prior to the trial. Plaintiffs immediately excepted for the reason that the court had withdrawn Count I and no instruction on Count I would be submitted to the jury.
The opinion of Judge Wennerstrum correctly holds the overruling by the trial court of the previous ruling and order made by that court under R.C.P. 105, was a procedural error which required the granting of a new trial. It is clear the trial court's error, in refusing to submit to the jury Count I of plaintiffs' petition, made after both parties had completed their evidence and rested, deprived plaintiffs of the basic presumption pleaded in Count I and relied upon by them and cannot be said to be without prejudice. Whether the order made under R.C.P. 105 was correct or erroneous *350 it was final for all purposes connected with that trial. Plaintiffs had the right to prepare and try their case in reliance thereon and they may have omitted evidence, perhaps expert testimony, which they otherwise would have deemed it advisable to offer.
Defendant did not apply for, nor was it granted an interlocutory appeal from the order made under R.C.P. 105, which provided plaintiffs should have the benefit of the presumption afforded by Code section 489.15. However, that order would still be subject to review by us upon appeal by defendant from a final judgment adverse to it. This follows from the last sentence of R.C.P. 105: "If such ruling does not dispose of the whole case, it shall be deemed interlocutory for purposes of appeal."
On a purely procedural ground the opinion of Judge Wennerstrum directs that the trial court give plaintiffs the benefit of the presumption under section 489.15 but declines to decide whether this is correct. Hence, if plaintiffs recover upon a retrial and there is another appeal by defendant this court could hold section 489.15 was not applicable and reverse the judgment on the ground the trial court gave plaintiffs the benefit of the statutory presumption, although the holding upon this appeal required the trial court to do that very thing.
Such possible result is unnecessary and may be avoided if we now decide the applicability of section 489.15, and direct the trial court accordingly. The applicability of that statute has been fully argued by both sides upon this appeal. I believe it should be decided and not avoided.
Appellant contends: "said section 489.15 * * * applies only to transmission lines running `along, over and across any public highway or grounds outside of cities and towns' as provided in section 489.1 and is not applicable to lines erected or maintained over private property."
The provision here in question in section 489.15, states: "In case of injury * * * by any such transmission line, negligence will be presumed * * *." The application of the word such is not limited to Code section 489.1. It includes other pertinent sections in Code Chapter 489, entitled "Electric Transmission Lines." In fact, as originally enacted by the Legislature, section 6 of Chapter 174, Acts 35th G.A., provided: "In case of injury * * * by any transmission line operating under this act, negligence will be presumed", etc. (Italics supplied.)
Various sections of Chapter 489 refer to transmission lines across private lands or the land of any person, the taking of private property by eminent domain, the payment of damages to owners of lands or crops caused by entering and occupying said lands, agreements with landowners with reference to the use of lands, etc. Section 489.19 provides no transmission line shall be constructed, except by agreement, within one hundred feet of any building except when the line crosses or runs along a public highway or along railway right of way.
Iowa Railway & Light Corp. v. Lindsey, 211 Iowa 544, 550, 231 N.W. 461, 463, 464, states transmission lines consist of "fixtures and appliances necessary for conducting electric current."
Anderson v. Fort Dodge, Des Moines & Southern Railroad Co., 208 Iowa 369, 226 N.W. 151, holds the statute (now section 489.15) by its terms applies only to cases of injuries outside of cities and towns. Probably for that reason the statute was not involved in Coleman v. Iowa Railway Light & Power Company, 189 Iowa 1063, 178 N.W. 365. However, in that case the court held that payment for and decedent's ownership of, the poles, wires and transformers, erected by defendant under an agreement with him and leading from his house, did not absolve it from the duty to properly construct, maintain and inspect the line.
In Beman v. Iowa Elec. Co., 205 Iowa 730, 732, 734, 218 N.W. 343, 345, the wires transmitting the current which caused the death of plaintiff's intestate and the poles to which the same were attached, were on and over property outside the public highway. *351 The decision states plaintiff had the burden to establish a prima facie case but was aided by the statutory presumption, to wit: "`In case of injury * * * by any such transmission line, negligence will be presumed * * *.'"
I would so hold in the case at bar and not rest the decision solely on the procedural ground.
LARSON, C. J., and GARFIELD, PETERSON and SMITH, JJ., join in this special concurrence.