KENNETH CALKINS, appellant, v. ADAMS COUNTY COOPERATIVE ELECTRIC COMPANY, a corporation, appellee.

No. 52050.

JULY 14, 1966.

Lee R. Watts, of Corning, for appellant.

Jones, Cambridge, Carl & Howard, of Atlantic, and Eugene W. Mullin, of Corning, all for appellee.

SNELL, J.—This is a law action wherein plaintiff seeks damages for personal injuries. Defendant's motion to dismiss was sustained and plaintiff appeals.

Defendant is a corporation and owns and operates a transmission line for the purpose of selling and distributing electric energy.

Plaintiff alleged that he was riding his horse and driving livestock along a road. He said that he and his horse came in contact with a guy wire attached to a pole in the transmission line of defendant and as a result he was thrown and injured. The petition then states:

"Plaintiff does not set forth any specific acts of negligence on the part of the defendant which caused the damage and injury to the plaintiff, and the plaintiff relies in this action upon his allegation of general negligence and carelessness under section 489.15, Code of Iowa, 1962."

It should be noted that there is no claim of irregular installation of the guy wire, that it was out of place or line so as

to interfere with normal or anticipated traffic or was energized or electrically "hot."

The pertinent part of section 489.15, Code of Iowa, relied on by plaintiff, provides:

"Injury to person or property. In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof."

By motion to dismiss for failure to state a cause of action defendant tendered three main points. We summarize and paraphrase.

1. That the statute is applicable only to injuries received from the transmission of electricity and does not apply to the poles or guy wires of an electric line.

2. That the statute if construed as sought by plaintiff would violate the due process clause of the Fourteenth Amendment of the Constitution of the United States.

3. That plaintiff made no claim of freedom from contributory negligence.

We quote from the trial court's ruling:

"To find the meaning and effect of sec. 489.15 it is necessary to determine the legislative intent—to ascertain why the legislature chose to make, by a specific statute, an exception to the ordinary procedural rules of presumptions and burden of proof. It seems to this court that a special and extraordinary statute was adopted because of the special and extraordinary hazard and danger to persons and property created by the transmission of a dangerous substance, electrical energy. The utility undertakes to generate and transmit this dangerous substance; it does so by means of equipment and facilities under its control, therefore, its negligence is presumed, subject to rebuttal, if damages result from the escape of this substance, or from the transmission of an excessive charge. The poles, wires, guy wires themselves present no special or extraordinary hazard or danger. It is the conclusion of this court that the application of sec. 489.15 should be confined to the extraordinary hazards and dangers apprehended by the legislature, and that the facts

alleged in plaintiff's petition are not within the purview of this statute."

On appeal two issues are tendered, they are: 1. The construction of the statute, and 2, the constitutionality of the statute if construed as claimed by plaintiff.

█ I. The words "such transmission line" in the statute include the poles, wires, crossarms, guy wires, etc. of the transmission line. Iowa Railway & Light Corporation v. Lindsey, 211 Iowa 544, 550, 231 N.W. 461. See also special concurrence in Litchford v. Iowa-Illinois Gas and Electric Co., 247 Iowa 947, 955, 75 N.W.2d 346. In the Lindsey case section 489.15 was not involved. In Litchford plaintiff suffered burns caused by electricity.

II. The presumption created by the legislature in section 489.15 has been applied in favor of injured parties on numerous occasions. Walters v. Iowa Electric Co., 203 Iowa 471, 212 N.W. 884; Beman v. Iowa Elec. Co., 205 Iowa 730, 218 N.W. 343; Isaacs v. Eastern Iowa Light & Power Cooperative, 236 Iowa 402, 19 N.W.2d 208; Litchford v. Iowa-Illinois Gas and Electric Co., supra.

Defendant does not argue that the presumption was not properly applied in the cited cases. It is argued that all of those cases dealt with injury from the electricity itself and that it was only in relation to such type of cases that the legislature intended to create the presumption. The trial court agreed and turned its opinion on that point.

III. When so construed and limited the constitutionality of the statute is not challenged.

Chapter 489, Code of Iowa, deals with electric transmission lines. Because of the inherent danger and special care required incident to the transmission of electricity special statutes are necessary and proper. However, to create a special rule for determining liability, when electricity had nothing to do with the injury, just because a guy wire is used to stabilize a pole belonging to an electric transmission company rather than to a telephone company, is an entirely different matter.

Here there is no claim that electricity or the transmission thereof had anything to do with plaintiff's injury.

Under the cases cited in Divisions I and II, supra, the situation in the case at bar would be within the purview of the statute if electricity had anything to do with the injury.

IV. The due process clause of Amendment 14 to the Constitution of the United States guarantees due process of law and proscribes the denial to any person "the equal protection of the laws." A statute that creates an unreasonable discrimination contravenes the constitution.

The rule, supported by numerous authorities, is stated in 16 Am. Jur.2d, Constitutional Law, section 551, as follows: "* * * due process of law and the equivalent phrase 'law. of the land' have frequently been defined to mean a general and public law operating equally on all persons in like circumstances, and not a partial or private law affecting the rights of a particular individual or class of individuals in a way in which the same rights of other persons are not affected. Under this guaranty not only must a statute embrace all persons in like situation, but the classification must be natural and reasonable, not arbitrary and capricious. Due process of law is denied when any particular person of a class or of the community is singled out for the imposition of restraint or burdens not imposed upon, and to be borne by, all of the class or of the community at large, unless the imposition or restraint is based upon existing distinctions that differentiate the particular individuals of the class to be affected from the body of the community. An act which affects only, and exhausts itself upon, a particular person or his rights and privileges, and has no relation to the community in general, is rather a sentence than a law and one which condemns without a hearing. It would seem that it may safely be stated as a general rule that whatever, in the matter of classification, complies with the requirements as to the equal protection of the laws will, so far as such an objection is concerned, be likewise upheld as amounting to due process of law. In fact, the courts frequently refer to both clauses at once in discussing the constitutionality of statutes."

In section 490 it is said: "Due process of law as guaranteed by the Fourteenth Amendment was defined in terms of the equal protection of the laws—that is, as being secured by laws operating on all alike, and not subjecting the individual to the arbi-

trary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice."

█ The statute before us, if construed as sought by plaintiff, creates a demonstrable discrimination.

Guy wires are commonly used to stabilize not only electric transmission line poles but telephone poles and corner fence posts.

Plaintiff claims he and his horse came in contact with a guy wire. He was thrown from his horse and injured. Had the same thing happened because of contact with a guy wire attached to a telephone pole or a corner fence post there would be no presumption of negligence. Just because plaintiff came in contact with a particular guy wire that he does not even claim was anymore dangerous than other ordinary guy wires he claims the benefit of a special rule.

It is plausibly argued that such a construction of the statute is within its wording. A cursory reading of the statute might lead to that conclusion but the result would be unsound and discriminatory. It is clear that the statute is fairly open to construction.

It might be argued that electric transmission lines require a different and heavier type of construction from telephone lines thus creating a reasonable distinction. Common observation discloses that some electric transmission lines use taller and heavier poles than the telephone lines across the road. However, this is not always apparent. Frequently and along many roads only a close look can reveal which is the electric line and which is the telephone line.

The various types of construction used by public utilities have nothing to do with the problem before us.

In the case before us the type and character of construction is not the issue. Plaintiff claims a presumption of negligence not because of the construction but because the overhead wires carried electricity for sale rather than lower voltage electricity for transmitting communications.

When electricity has nothing to do with an injury we think the statutory construction sought by plaintiff would create a clear and unconstitutional discrimination.

■ V. It is argued that the statute relates to procedure and not substantive rights. We do not agree that the problem is so limited. The creation of a statutory presumption of negligence and proximate cause even though rebuttable does more than change the method of procedure. It creates a prima facie case where one does not otherwise exist and places on a particular defendant a burden not required of others. Under plaintiff's claimed construction of the statute it would not even be necessary to show that the line was energized at the time to make a prima facie case. An allegation of the purpose or use and ownership would suffice. Proof in rebuttal that the transmission line at the time was carrying no energy would show that electricity was not involved and might factually rebut the statutory presumption but there is nothing in the statute that says so. In fact, not only negligence but proximate cause is presumed. The statute says "negligence will be presumed * * * in causing said injury * * *."

Much more than mere procedure is involved. Obstacles amounting to discrimination are created.

In Danner v. Hass, 257 Iowa 654, 667, 134 N.W.2d 534, 543, we discussed the power of the legislature to prescribe rules of evidence. We quoted with approval from 16A C. J. S., Constitutional Law, section 621, that rebuttable presumptions may be created or destroyed. We are in accord with the abundant authorities supporting this rule. The rule, however, does not go so far as to permit an obvious discrimination between persons or corporations based only on unrelated use or ownership of a utility.

■ When a special situation is created or a special hazard exists special rules may be established but the rules must be appropriate and reasonable. To create a special rule of presumption of negligence and proximate cause incident to a guy wire belonging to one utility but not to the same kind of guy wire belonging to a different utility is a clear discrimination.

Language in Western & Atlantic Railroad v. Henderson, 279 U. S. 639, 641, 49 S. Ct. 445, 446, 73 L. Ed. 884, 887, is significant. In that case a Georgia statute created a presumption of liability against a railroad company rebuttable by showing of

"all ordinary and reasonable care and diligence." In a railroad grade crossing death case the court instructed:

" 'When it has been made to appear that injury or damage has occurred by reason of the operation of the locomotive and train of cars of a railroad company, the presumption arises that the railroad company and its employees were negligent in each of the particulars specified in the plaintiff's petition * * *.' "

A verdict for plaintiff affirmed by the Supreme Court of Georgia was reversed by the United States Supreme Court. The court said:

"A statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property. Manley v. Georgia, [279 U. S. 1, 49 S. Ct. 215, 73 L. Ed. 575] and cases cited.

"The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company or of the traveler on the highway or of both or without fault of anyone. Reasoning does not lead from the occurrence back to its cause. * * *."

The court concluded by holding the presumption raised by the statute "is unreasonable and arbitrary, and violates the due process clause of the Fourteenth Amendment." Under this case two standards must be met. There must be an opportunity to rebut and additionally the presumption may not be arbitrary, i.e., it must have some reasonable relationship between the fact proved and the ultimate fact to be established.

In the case at bar the statutory presumption "may be rebutted by proof", but it is arbitrary and there is no reasonable relationship between the fact that plaintiff was thrown from his horse after contact with a particular guy wire rather than one attached to some other pole.

Numerous presumptions, inferences and liabilities have been created and approved where none previously existed, but they may not create a burden in one situation where none exists in a comparable situation.

VI.  Many of the authorities discussed in the briefs are res

ipsa loquitur cases. They need not be discussed here. This is not a res ipsa loquitur case. Plaintiff relies solely on the statute. The statute creates a presumption. The res ipsa inference arises when the occurrence in which the injury was sustained is shown to be of such a nature as would not ordinarily happen without negligence. Here there is neither claim of reliance on the res ipsa inference nor allegations for its support.

VII. Appellant argues that "chapter 489 establishes a franchise privilege. In the exercise of its police powers every state has the right to regulate and control its public highways and grounds and this is usually done through the vehicle of a franchise from the legislature, or through a franchise which the legislature has authorized some other arm of government to issue. No one has a legal right to a franchise except as that right may be created by the legislature. It may be a blanket franchise, or a specific one for which an application must be made. It may be given or refused by the legislature, and if given, it may be upon such terms and conditions as the legislature may prescribe. It is a contract between the grantee and the state. * * *

"In granting a franchise, the state can make such distinctions and discriminations as it may desire, and they are not subject to challenge."

The presumption in section 489.15 applies to electrical transmission lines whether over public property under franchise or over private property. Litchford v. Iowa-Illinois Gas and Electric Co., supra. The statute does not relate to a franchise and the argument is not germane to our problem.

VIII. Electricity is dangerous. The statutory presumption is justified if it is appropriately interpreted. A reasonable basis for distinction is lost when we attempt to draw a line between an electric utility pole and a telephone pole, a flagpole or a fence post.

We conclude that section 489.15, if interpreted and applied as sought by plaintiff, would be violative of the constitution.

We assume that the legislature intended a **constitutional** enactment. We proceed from that premise. "All presumptions are indulged in favor of constitutionality." Danner v. Hass, supra, at page 661 of 257 Iowa.

■ IX. It is our duty if possible to construe the statute so as to preserve its constitutionality.

■ In Kerr v. Chilton, 249 Iowa 1159, 1165, 91 N.W.2d 579, we quoted with approval from 82 C. J. S., Statutes, section 326, pages 623, 624, as follows: " 'A construction which will cause objectionable results should be avoided and the court will, if possible, place on the statute a construction which will not result in injustice, * * *.' "

Questions of due process, constitutionality and statutory construction were involved. Supported by cited authority we held that a statute will be construed, if fairly possible, so as to avoid doubt as to its constitutionality. Loc. cit. 1166 of 249 Iowa. This statement is repeated in Jacobs v. Miller, 253 Iowa 213, 218, 111 N.W.2d 673.

In Iowa Power & Light Co. v. Pleasant Hill, 253 Iowa 532, 536, 112 N.W.2d 304, we approved a statutory construction "that is not reduced to an absurdity, meaningful effect is given to its provisions * * *."

Construed as it was by the trial court the constitutionality of section 489.15 is not challenged. So construed the statute is clear in its purpose and meaningful in its effect.

X. Due to the way this case arose, neither counsel elected to argue the point of failure to plead freedom from contributory negligence. The injury occurred before July 4, 1965, but the petition was filed after that date. The effect of passage of chapter 430, Acts of Sixty-first General Assembly, 1965, on cases showing this chronology has not yet been subjected to review by this court.

The importance of the question is such that this court should not decide that issue without the advantage of briefs and arguments by both sides. Neither should either party be penalized by failure to argue a matter which was not necessary to or part of the trial court's opinion. No issue relative to contributory negligence is before us and we make no pronouncement thereon.

The case is—Affirmed.

All JUSTICES concur except BECKER, J., who dissents.

BECKER, J.—I must respectfully dissent.

I. Iowa Railway and Light Corporation v. Lindsey, 211

Iowa 544, 550, 231 N.W. 461, holds that the words "such transmission line" used in section 489.15 include the poles, wires, crossarms, guy wires, etc., of the transmission line.

That case said: "A careful reading of all of the statutes touching upon this proposition shows that the subject dealt with is electric transmission lines. It goes without saying that the term 'transmission lines' consists of more than poles, and the very wording of the statute above quoted shows that the legislature contemplated, in the use of this term, not only the poles, but the wires, guy wires, towers, cables, conduits, and other fixtures and appliances necessary for conducting electric current."

At another point in the opinion this court said:

"It is obvious from the statutes, therefore, that the legislature has dealt with this question of electric transmission lines as an entity, treating the poles, crossarms, wires, guy wires, etc., as constituting the 'line;' and secondly, it intended, and in fact says, that the board of railroad commissioners may authorize the construction of a line upon a highway. To our minds this means but one thing: that is, the whole of the line, together with the necessary structure and attachments, is to be placed within the confines of the highway."

The Lindsey case was concerned with a dispute over the location of a transmission line and did not specifically involve interpretation of section 489.15, it was quoted with approval in Litchford v. Iowa-Illinois Gas and Electric Co., 247 Iowa 947, 955, 75 N.W.2d 346, where section 489.15 was specifically interpreted. While the citation occurred in the concurring opinion, it was a five JUSTICE concurrence. Hence, it represented the view of a majority of the court, the opinion states:

"The provision here in question in section 489.15, states: 'In case of injury * * * by any such transmission line, negligence will be presumed * * *.' The application of the word *such* is not limited to Code section 489.1. It includes other pertinent sections in Code chapter 489, entitled 'Electric Transmission Lines.' In fact, as originally enacted by the legislature, section 6 of chapter 174, Acts of the Thirty-fifth General Assembly, provided: 'In case of injury * * * *by any transmission*

*line operating under this act,* negligence will be presumed . * * *.' (Italics supplied.)

"Various sections of chapter 489 refer to transmission lines across private lands or the land of any person, the taking of private property by eminent domain, the payment of damages to owners of lands or crops caused by entering and occupying said lands, agreements with landowners with reference to the use of lands, etc. Section 489.19 provides no transmission line shall be constructed, except by agreement, within one hundred feet of any building except when the line crosses or runs along a public highway or along railway right of way."

Thus we have recognized that chapter 489 deals with more than the right to use the public highway for transmission lines. It includes the right to take property by eminent domain, the right to cross private lands and other important advantages granted by the legislature to those who receive a franchise. In so holding we have held that the phrase transmission lines includes poles, guy wires, etc.

The presumption created by the legislature in section 489.15 has been applied in favor of injured parties on numerous occasions. Walters v. Iowa Electric Co., 203 Iowa 471, 212 N.W. 884; Beman v. Iowa Elec. Co., 205 Iowa 730, 218 N.W. 343; Isaacs v. Eastern Iowa Light & Power Cooperative, 236 Iowa 402, 19 N.W.2d 208; Litchford v. Iowa-Illinois Gas and Electric Co., supra. Defendant argues that all of those cases dealt with injury from the electricity itself and that it was only in relation to such types of cases that the legislature intended to create the presumption. The trial court agreed and turned its opinion on that point.

The intent to restrict the operation of the statute to harm caused by electrical energy is not evidenced by the statute itself. New material must be read into it to find such intent. Our prior interpretation has held otherwise in the Litchford case. It is clear that the transmission lines for electric energy must often be supported by much more elaborate equipment than is necessary for telephone wires, telegraph wires, and the like. There is no justification for us to read into the statute a limitation that was omitted by the legislature. We should hold that the presumption created by section 489.15 applies to the trans-

mission wires, poles, guy wires and other apparatus heretofore defined as a part of the transmission line as well as to the electric current itself.

II. It would then follow that if section 489.15 is a constitutionally valid statute as sought to be interpreted here, this case would be reversed and remanded for further proceedings.

In passing on the constitutionality of a statute, we restated the following principles in Danner v. Hass, 257 Iowa 654, 661, 134 N.W.2d 534, 539.

"All presumptions are indulged in favor of constitutionality; one who attacks a statute, alleging unconstitutionality, must prove its invalidity beyond a reasonable doubt; that a law may work hardship does not render it unconstitutional; if any reasonable basis may be conceived which supports the statute, it will be upheld, and the challenger must negative all possible bases; the courts are not concerned with the wisdom, justice, policy or expediency of a statute; and we will adopt a liberal interpretation of the Constitution in favor of the constitutionality of legislation."

In Danner v. Hass, supra, we discussed the power of the legislature to regulate the admission of evidence quoting 16A C. J. S., Constitutional Law, section 621, pages 814–816, which we here set forth more fully:

"*Although the legislature may prescribe rules of evidence, in order to constitute due process of law such rules must be reasonable and afford opportunity for defense.* The legislature in its discretion may, without denial of due process of law, prescribe changes in the rules of evidence for the trial of civil cases, and may make such changes applicable to existing causes of action, past transactions, and even to pending cases, subject in all cases, however, to the limitation that it may not preclude a party from presenting the facts supporting his theory of the case. *It may, for example, create rebuttable presumptions, or destroy presumptions, regulate the burden of proof and the admissibility as well as the weight to be accorded to and the sufficiency of evidence * * *.*" · (Emphasis supplied.)

Defendant cites Western & Atlantic Railroad v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, in support of its con-

tention that the use of this section to provide a legal presumption or prima facie case for other than an injury from electrical energy would permit an unconstitutional interpretation of said statute.

We considered the effect of the Henderson case on this statute in Isaacs v. Eastern Iowa Light & Power Cooperative, supra, but there the constitutional issue was not raised and the injury was by contact with the electrical energy itself. We said on pages 406, 407 of 236 Iowa:

"Appellant argues that the rules of evidence are analogous to those applied in cases involving the doctrine of res ipsa loquitur. It is further argued that as in other cases involving rebuttable presumptions, the burden of going forward with the evidence reverted to the appellee when the proof of the appellant disclosed the lack of negligence on its part, citing Schaeffer v. Anchor Mut. F. Ins. Co., 133 Iowa 205, 100 N.W. 857, 110 N.W. 470, in which a presumption was conclusively negatived; State v. Butler, 186 Iowa 1247, 173 N.W. 239, which holds that if the avoidance of the presumption had no flaw the indictment must fail; and Kauffman v. Logan, 187 Iowa 670, 174 N.W. 366, holding that presumptions must give place when in conflict with clear, distinct, and convincing proof.

"Appellant also cites Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A., N. S., 226, Ann. Cas. 1912A , 463; and Western & A. R. Co. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884. The latter case merely recites the well-known rule that a prima facie presumption casts upon the person against whom it is applied the duty of going forward on the particular point to which the presumption relates. The Turnipseed case discusses the question of the effect of a statutory rule of liability and the necessity of defendant's going forward with the evidence, saying, at page 43 of 219 U. S.:

" 'In default of such evidence, the defendant, in a civil case must lose, for the prima facie case is enough as matter of law.'

"We do not think that it is important, so far as this case is concerned, whether we consider the burden shifted or that appellant must go forward; nor is it important whether the rules governing this statutory presumption are analogous to those

governing the doctrine of res ipsa loquitur. Our concern primarily is whether the evidence in this case created a jury question. We may assume the rules are, as argued, the same as in res ipsa loquitur. The general rule as to the latter is found in 45 C. J. 1221, 1223, section 784: '* * * the weight of the inference as well as the weight of the explanation is for the determination of the jury.'

"To overcome the presumption the evidence must be clear and convincing. See Kauffman v. Logan, supra. If the presumption of negligence is not so overcome the presumption must stand. It follows as a matter of course that the presumption created by statute could not be said to have been overcome unless the evidence of appellant rebutted the presumption of negligence at all points so that the court could say as a matter of law that appellee's testimony had been completely rebutted."

However, the foregoing pronouncements were significantly modified in LeClere v. Iowa Electric L. & P. Co., 254 Iowa 779, 789, 119 N.W.2d 203, where we said that in regard to "* * * the defendant's burden to overcome the presumption established by section 489.15, Code, 1958, we find it advisable to point out that such a presumption need only be overcome or rebutted by a preponderance of the evidence rather than by 'clear and convincing evidence' as the court required in Instruction No. 6."

The significant verbiage in Henderson is: "A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment." Thus two standards are apparent. There must be opportunity to repel, i.e., to answer; and additionally the presumption must not be arbitrary, i.e., it must have some reasonable relationship between the fact proved and the ultimate fact to be established.

Since we have previously held, and defendant apparently concedes, this statute to be constitutional when electrical energy causes the injury or damage, the fair opportunity to answer test is met. Indeed, the specific reference to the fact that the presumption may be rebutted by proof, the continued requirement of this court that plaintiff maintain the burden of proof as evidenced in the Isaacs case, supra, and all others decided under

this section, and the recognition that the force of the presumption need only be rebutted by a preponderance of evidence, clearly qualified this statute on that ground and distinguishes it from the verbiage in the Henderson case.

III.   An additional requirement is the matter of rational connection. To be constitutionally interpreted must this statute be limited to injury or damage caused by the energy itself? Or can it be construed to cover damage caused by the wires and cables that carry the energy, the poles or towers that support those wires, guy wires, crossarms and such paraphernalia that we have held to be included in the term transmission line?

The legislature even in the early days of the history of this statute must have recognized that the dangers incident to the transmission of electricity should and would cause use of elaborate apparatus. It was granting the right of eminent domain over private property to further that purpose. This necessarily includes the right to come upon the property for maintenance and repairs. Right to use the highways at designated areas in a permanent fashion was also included. It could be anticipated that the exercise of such rights would result in injury unless due care was constantly exercised and that this injury might well be caused by the use of the apparatus, independent of the energy itself.

Further, the question of whether a pole was planted in a ground with due care and in accordance with sound engineering principles considering the size of the pole, the size and weight of the wires, and other factors might well be said to be technical matter more clearly available to the franchise holder than to a member of the general public, or a private property holder over whose land the line is constructed. This observation becomes even more forceful if the transmission line is one of the huge affairs not too uncommon on the countryside today. The necessity for guy wires, their placement and construction in a given case could well be considered in the same category.

It is not correct to say that only the danger from electrical energy itself has a rational connection with the presumption created. Limited as it is to a rebuttable presumption, the statute is more soundly interpreted to have a rational connection with the apparatus conveying the energy, as well as to the energy

itself. This does not seem to be too arbitrary a legislative condition to have been placed on the franchise holder who received the right to eminent domain and special privileges over the highway.

IV. The argument that such interpretation is discriminatory in that telephone companies are not subject to the presumptions cannot be accepted. The poles and apparatus used by the telephone companies are not the same. In many instances they are not even remotely comparable to equipment used for electrical transmission lines.

Since this case is here on pleadings alone, we know nothing of such comparability. But we should not need to know this, because the legislature's reference to transmission lines includes, by this court's definition, poles and guy wires. They may or may not be comparable. In view of the differences in purpose and the differences in size and kind of equipment to be anticipated, the broad coverage given by the legislature is not unreasonable.

There are numerous presumptions created both by statutory and common law in this state. Some of them might better be referred to as inferences, Presumptions in Iowa, 44 Iowa Law Review 147. The rebuttable presumption of negligence created by the Workmen's Compensation Act, section 85.19, is much stronger than that considered here and clearly shifts the burden of proof. That section was approved as constitutional by the United States Supreme Court in Hawkins v. Bleakly, 243 U. S. 210, 37 S. Ct. 255, 61 L. Ed. 678, Ann. Cas. 1917D 637. The presumption of intent to commit burglary growing out of possession of burglary tools was held constitutional in Mahar v. Lainson, 247 Iowa 297, 72 N.W.2d 516. Other instances might be cited but are unnecessary. The legislature's decision in this case to create a rebuttable presumption of negligence does not violate due process. It should be honored.

The statute in question meets the test of rational connection to the subject matter; that is, to the term "transmission line" as heretofore defined by this court. I would reverse.