Charles BRUNER; David Osterberg; Community Action Research Group; Iowa Ratepayers Association; New Davenport Caucus; Iowa Public Interest Research Group; Osterberg & Sheehan, Public Utility Economists; and Office of Consumer Advocate, Appellants,

v.

Andrew VARLEY, individually and in his capacity as Chairperson, Iowa State Commerce Commission; the Iowa State Commerce Commission; and Northwestern Bell Telephone Company, Appellees.

No. 86–826.

Supreme Court of Iowa.

Aug. 19, 1987.

Rehearing Denied Sept. 23, 1987.

Roger D. Colton, Boston, Mass., for appellants Charles Bruner, David Osterberg, Community Action Research Group, Iowa Ratepayers Ass'n, New Davenport Caucus, Iowa Public Interest Research Group, and Osterberg & Sheehan.

James R. Maret and David R. Conn, Des Moines, for appellant Office of Consumer Advocate.

Susan Allender, Patrick J. Nugent and Dean F. Stonner, Des Moines, for appellees Iowa State Commerce Com'n and Andrew Varley.

William K. Schaphorst and Richard W. Hoffmann, Des Moines, for appellee Northwestern Bell Telephone Co.

NEUMAN, Justice.

Iowa State Senator Charles Bruner and State Representative David Osterberg, along with five public interest groups who shall be collectively referred to as "petitioners" have joined with the Office of the Consumer Advocate in this appeal from a district court decision dismissing their petition in equity under Iowa Code chapter 22 (1985), Iowa's examination of public record statute. The object of the controversy is a consumer research report commissioned by Northwestern Bell, admitted as evidence in an earlier ratemaking proceeding, and accorded confidential status by the Iowa State Commerce Commission (ISCC). In this separate action seeking public disclosure of the report, the district court treated the proceeding as a judicial review of agency action instead of an original action in equity, applying the principles of appellate review found in Iowa Code section 17A.19. In so doing, the court disregarded the stat-

utory proof requirements of section 22.10. Accordingly, we reverse and remand for new trial.

## I. *Background Facts and Procedure.*

In 1983, Northwestern Bell commissioned a research project to examine customer acceptance of a variety of pricing packages for local measured (usage based) telephone service. The report generated by this research, identified by the acronym "LMS", is the focus of the current controversy.

During the pendency of a Northwestern Bell rate case before the ISCC in 1984, the ISCC issued a protective order applicable to all documents, including the LMS report, claimed by Northwestern Bell to be proprietary. The protective order allowed parties in the rate case to have access to the documents claimed to constitute trade secrets but prohibited their public dissemination. At the request of the Office of the Consumer Advocate, Northwestern Bell furnished it a copy of the LMS report, simultaneously requesting that the copy be given trade secret protection.

On May 3, 1984, the consumer advocate sought to introduce the LMS report into evidence in the rate case and requested a finding by the ISCC that the report did not constitute confidential information subject to trade secret protection. A hearing was held before the ISCC and testimony received concerning the report's status. On May 4, 1984, the ISCC ruled that the LMS report was a confidential record not subject to public disclosure. No appeal from that ruling was taken by any party to the ratemaking proceeding.

Several months later, petitioners (all but three of whom were *not* parties to the rate case) requested release of the LMS report by letter directed to Andrew Varley, chairman of the ISCC. General counsel to the ISCC, responding on behalf of Chairman

Varley and the ISCC, denied petitioners' request. The denial was based upon the trade secret and confidentiality exemption from disclosure cited in the ISCC's ruling at the conclusion of the May 4 evidentiary hearing.

Petitioners then filed in district court a petition in equity claiming violation of the public record disclosure requirements of Iowa Code chapter 22. Named as defendants were Andrew Varley, individually and as ISCC chairman, the ISCC, Northwestern Bell, and the consumer advocate. Eventually the consumer advocate was realigned pursuant to motion and participated in the district court proceedings as a cross-claimant against the ISCC.

Pretrial rulings by the district court significantly influenced the course of the proceedings below and are challenged on this appeal. Of pivotal importance is the court's ruling on an application for separate adjudication of law points filed by petitioners in accordance with Iowa Rule of Civil Procedure 105. The motion was prompted by responsive pleadings in which Northwestern Bell claimed petitioners had not exhausted their administrative remedies under chapter 17A and were barred from further proceedings by principles of res judicata. Additionally, the ISCC answer claimed that its chairman's decision on the confidential status of the report was not subject to review under chapter 22 because it was an evidentiary ruling made in the exercise of independent judicial discretion in a contested case proceeding held under the provisions of Iowa Code chapters 17A and 476.

■ In its order adjudicating these points of law, the district court held that section 22.10 provides an additional remedy to any available to the parties under section 17A.19 and that petitioners were not barred by principles of res judicata from pursuing this independent action.[1] The

---

1. We summarily reject respondents' appellate challenge to the court's res judicata ruling, asserted here as a fallback argument in support of the district court dismissal. Respondents failed to prove petitioners were parties to the prior action or sufficiently connected in interest to

have had a full and fair opportunity to litigate the disclosure issue, matters essential to application of the doctrine. *See Tigges v. City of Ames,* 356 N.W.2d 503, 509 (Iowa 1984); *Israel v. Farmers Mut. Ins. Ass'n,* 339 N.W.2d 143, 146

court then went on to hold that "petitioners must show unreasonable, arbitrary or capricious acts on the part of respondents, or lack of substantial evidence to support respondents' decision, in order to secure the release of the LMS report from its current protection of confidentiality." Petitioners challenged this latter holding by way of a motion to reconsider under Iowa Rule of Civil Procedure 179(b), but the court declined to modify or amend its ruling.

Based on this standard of review established by the court, the parties agreed to submit the case on briefs and a stipulated record. Meanwhile, a substitution of judges occurred. While Judge Rodney Ryan had ruled on the application for adjudication of law points, Judge James P. Denato was assigned to rule on the merits of the case.

Judge Denato's decision on the merits followed a somewhat winding course, not surprising in view of the posture of the case when he received it. In short, he held that under the scope of review established by Judge Ryan's adjudication of law points, petitioners failed to prove that ISCC's action in protecting the LMS report from disclosure was unreasonable, arbitrary, capricious, or lacking in substantial evidentiary support. It was his opinion, however, that Judge Ryan had applied an erroneous standard of review. Concluding that he was not bound by this error, Judge Denato proceeded to measure the proof by the substance and procedure of chapter 22. Given the preference expressed in chapter 22 for open access, and Northwestern Bell's limited competition in the area of local service, he found the report met neither the statute's confidentiality exception for trade secrets nor competitive disadvantage. *See* Iowa Code §§ 22.7(3), (6).

Subsequently, Judge Denato reversed his position in response to posttrial motions filed by Northwestern Bell and ISCC pursuant to Iowa Rule of Civil Procedure 179(b). Upon this reconsideration, Judge Denato determined that he was bound by Judge Ryan's ruling, right or wrong. He therefore applied the chapter 17A standard

of review and dismissed petitioners' petition. It is from this dismissal that petitioners have appealed.

## II. *Issues on Appeal.*

Two fundamental questions are posed by this appeal. First, we address petitioners' challenge to the standard of proof applied by the district court: Was it error to apply an appellate standard of review to this original action in equity? Concluding that it was, we then proceed to the dilemma created by the error: Does the substitution of a different standard of proof require us to remand for a new trial, notwithstanding our authority to review this equity matter de novo?

### A. *Scope of Review.*

This action was commenced under Iowa Code chapter 22. By its terms, "[e]very person shall have the right to examine and copy public records and to publish or otherwise disseminate public records or the information contained therein." Iowa Code § 22.2. Our prior decisions have interpreted this legislative mandate as favoring public release of information and construing narrowly the statute's exceptions. *Board of Directors of Davenport Community School Dist. v. Quad City Times*, 382 N.W.2d 80, 82 (Iowa 1986); *City of Dubuque v. Dubuque Tel. Herald*, 297 N.W.2d 523, 526–27 (Iowa 1980).

Sections 22.5 and 22.10 speak to the issue of enforcement of the rights granted by the chapter. The parties do not dispute the fact these sections pose alternative remedies. Their disagreement stems from the respondents' assertion that an action seeking disclosure of an agency's record should proceed in accordance with the judicial review procedures of chapter 17A. Preliminarily the district court rejected this proposition, reasoning that the plain language of the statute abrogated the exclusivity of the administrative procedure act in this area. Our examination of the perti-

(Iowa 1983); *Hunter v. City of Des Moines*, 300     N.W.2d 121, 123 (Iowa 1981).

nent statutory language leads us to concur in the court's analysis.

Section 22.5 states in pertinent part:

The provisions of this chapter and all rights of persons under this chapter may be enforced by mandamus or injunction, *whether or not any other remedy is also available. In the alternative,* rights under this chapter may also be enforced by an action for judicial review according to the provisions of the Iowa Administrative Procedure Act....

(Emphasis added.)

Similarly, section 22.10, captioned "Civil Enforcement," reiterates that "[t]he rights and remedies provided by this section *are in addition to any rights and remedies provided by section 17A.19.*" (Emphasis added.) The section goes on to allow

[a]ny aggrieved person, ... taxpayer, ... or citizen ... [to] seek judicial enforcement of the requirements of this chapter in an action brought against the lawful custodian.... Suits to enforce this chapter shall be brought in the district court....

Iowa Code § 22.10(1).

This choice of remedies, clearly expressed by the foregoing statutory language and recognized by Judge Ryan, was rendered meaningless, however, by the court's subsequent fusion of the two remedies. By recognizing petitioners' right to bring an independent action in equity but imposing upon them a chapter 17A burden of proof, the court clearly disregarded the statute's specific terms and underlying policies.

Beyond establishing alternative enforcement remedies, section 22.10 specifically allocates the burden of going forward and standard of proof to be applied in such a proceeding:

Once a party seeking judicial enforcement of this chapter demonstrates to the court that the defendant is subject to the requirements of this chapter, that the records in question are government records, and that the defendant refused to make those government records available for examination and copying by the plaintiff, *the burden of going forward*

*shall be on the defendant to demonstrate compliance with the requirements of this chapter.*

*Upon a finding by a preponderance of the evidence* that a lawful custodian has violated any provision of this chapter, a court [shall enforce statutory remedies]....

*Id.* § 22.10(2), (3) (emphasis added).

The first series of steps in this statutory scheme—a prima facie showing that the statute applies to the controversy—is clearly established in the record before us. Although Northwestern Bell now argues that it has never conceded that the LMS report is a public record, its answer to the petition and participation in the trial stipulation belies its present position. The record reflects that answers filed by *both* ISCC and Northwestern Bell admitted paragraph sixteen of the petition which claimed that the report, introduced in the rate proceeding, "was thus a record of the Iowa State Commerce Commission." Moreover, we are persuaded by the consumer advocate's argument that the statutory definition of "public record" found at section 22.1 embraces not only records generated by the state but those in its possession by virtue of its quasi-judicial functions. Such an argument echoes our position in *Howard v. Des Moines Register & Tribune Co.,* 283 N.W.2d 289, 299 (Iowa 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980), where we observed that "[t]o facilitate public scrutiny of the conduct of public officers, the statute generally permits public access to writings *held by them in their official capacities, regardless of origin.*" (Emphasis added.)

The next procedural requirement of section 22.2—that the government must carry the burden of justifying nondisclosure—has likewise been recognized by this court as evidencing a legislative intent to require agencies' compliance with the statute and thereby remedy the unnecessary secrecy in conducting the public's business. *Dubuque Tel. Herald,* 297 N.W.2d at 527.

Disregarding this statutory scheme, the district court placed the burden upon *peti-*

*tioners* to prove the ISCC's refusal to disclose the LMS report was unreasonable, arbitrary and capricious and unsupported by substantial evidence. This move was at odds not only with section 22.10(2) but with the plain language of section 22.10(3) which directs that the proof shall be by a preponderance of evidence demonstrating violation of the statute.

The district court's error may be traced to its misplaced reliance on *Craigmont Care Center v. Department of Social Services*, 325 N.W.2d 918 (Iowa App.1982), a case on which Northwestern Bell also relies in support of its contention that the judicial review standards of chapter 17A may be properly applied to an original action commenced under chapter 22. In *Craigmont*, the court of appeals affirmed a district court finding that a department of social services disclosure of state mandated cost reports filed by nursing homes was neither unreasonable, arbitrary, nor capricious. *Craigmont*, 325 N.W.2d at 921–22. Judge Denato noted in his findings and decree that *Craigmont* was "an original suit in the District Court to enforce Chapter 22 ... but ... the scope of review was pursuant to section 17A.19 and 17A.20." This characterization of *Craigmont* is incorrect. The case was an appeal from a district court decision on judicial review.[2] Thus, application of the appellate review standards of chapter 17A was appropriate.

Although distinguishable from the case before us, *Craigmont* is instructive on the matter of harmonizing chapters 17A and 22. At first blush, there appears some merit in Northwestern Bell's argument that it is illogical for the legislature to intend one standard of review to apply to proceedings commenced under chapter 17A and another to proceedings under chapter 22. We note, however, that under either scheme the policy of chapter 22 favors release of public documents. A case like *Craigmont*—in which a private vendor petitions to *prevent* an agency from disclos-

ing a public record—lends itself to judicial review. Commencing a separate action *after* release of the document would be of little value to such a petitioner. Moreover, the public policy favoring disclosure logically renders a chapter 17A standard of review appropriate when an agency's factual findings justify release of the record.

Conversely, the goals and remedies of chapter 22 are arranged to assist parties seeking the *release* of public records. Here the independent remedy of chapter 22 becomes important. In the face of an agency's decision *not* to release a record, a court's deferral to that agency's findings would render chapter 22 meaningless. Such a situation compels the need for a district court to make its own findings based on the preponderance of evidence standard provided by section 22.10(3).

In summary, we conclude that the district court incorrectly applied a section 17A.19 standard of review to this original action in equity commenced under chapter 22.

### B. *Remand for further proof.*

Judge Denato presaged our opinion in this matter when, in his original decree, he concluded that the scope of review established by Judge Ryan's adjudication of law points was incorrect. When he later reversed his position, he did so in response to an argument urged by Northwestern Bell which it now advances on appeal: that Northwestern Bell was entitled to rely on Judge Ryan's order on adjudication of law points and would be unduly prejudiced by the abandonment of those review standards absent the opportunity for a new trial and the presentation of additional evidence.

Northwestern Bell's argument has support in our prior decisions interpreting the effect of adjudications under rule 105. The rule itself provides that any point of law so determined "shall not be questioned on the trial of any part of the case of which it

---

**2.** The consumer advocate, in an attempt to highlight the trial court's error, appended a copy of the *Craigmont* petition to its brief. ISCC moved to strike the attachment, alleging it to be a matter outside the record. We hereby overrule ISCC's motion. The document is harmless in light of the specific language of the reported decision confirming that the appeal was from a district court decision on judicial review. *Craigmont*, 352 N.W.2d at 919.

does not dispose." Iowa R.Civ.P. 105. We have interpreted the rule to be not only a guide by which parties may determine their conduct on any remaining issues, *Allied Mut. Casualty Co. v. Long*, 252 Iowa 829, 831–32, 107 N.W.2d 682, 683 (1961), but a final order becoming "the law of the case" in all further proceedings in the absence of an appeal. *Berger v. Amana Soc'y*, 253 Iowa 378, 382, 111 N.W.2d 753, 755 (1962); *Litchford v. Iowa Illinois Gas & Elec. Co.*, 247 Iowa 947, 952, 75 N.W.2d 346, 348 (1956).

Had Judge Denato persisted in applying a different legal standard from that established by Judge Ryan's rule 105 order, he would have committed error justifying the grant of a new trial. *See Litchford*, 247 Iowa at 952, 75 N.W.2d at 348. Of course we are not bound by the erroneous ruling on appeal. *Avoca State Bank v. Merchants Mut. Bonding Co.*, 251 N.W.2d 533, 539 (Iowa 1977). Nevertheless, similar justification for a new trial is presented. Our amendment of the standard by which the case was submitted has an obvious impact on the record to be reviewed.

The record reveals that the parties tailored their trial strategies to a standard of proof we have now found incorrect. No evidence was presented other than that offered at the initial evidentiary hearing before the ISCC, in reliance on Judge Ryan's ruling that the matter would be treated like a section 17A.19 judicial review. While the parties differed on their assessment of that ruling, they proceeded with a stipulated record in accordance with its dictates. Northwestern Bell has maintained throughout these proceedings, however, that had the more stringent standard of proof required by section 22.10(3) been imposed, respondents would have offered additional expert testimony regarding the LMS report as a document entitled to trade secret protection.

Even though our scope of review in this equity action is de novo, Iowa R.App.P. 4, we face a record limited by evidentiary constraints erroneously imposed by the trial court. In fairness to the parties, we are persuaded that they should be given the opportunity to develop and try their case as they choose under the appropriate standard of review.

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court for new trial consistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except REYNOLDSON, C.J., who takes no part.