# IN THE SUPREME COURT OF IOWA

No. 09–0608

Filed November 12, 2010

**ANNE HENSLER,**

Appellee,

vs.

**CITY OF DAVENPORT,**

Appellant.

---

Appeal from the Iowa District Court for Scott County, Gary D. McKenrick, Judge.

A city appeals a decision holding its ordinance unconstitutional and awarding attorney fees to the plaintiff. The plaintiff cross-appeals the award of attorney fees. **APPEAL AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; CROSS-APPEAL REVERSED AND REMANDED.**

Thomas D. Warner, Davenport, and Christopher S. Jackson, Davenport, for appellant.

Randall C. Wilson of ACLU of Iowa Foundation, Des Moines, and Michael J. McCarthy of McCarthy, Lammers & Hines, Davenport, for appellee.

**WIGGINS, Justice.**

The City of Davenport appeals a district court order finding its parental responsibility ordinance unconstitutional. The city also appeals the amount of the attorney fees awarded to the plaintiff. The plaintiff cross-appeals the attorney fee award. On appeal, we find the presumption of failure to exercise reasonable parental control under the Davenport Parental Responsibility Ordinance is unconstitutional and sever the unconstitutional portion of the ordinance from the remainder of the ordinance. We also vacate the attorney fee award and remand the case to the district court to reconsider its attorney fee award by considering the level of the plaintiff's success as one of the factors in determining reasonable attorney fees. Accordingly, we affirm in part and reverse in part the judgment of the district court, remand the case to the district court to reconsider its award of attorney fees, and enter judgment consistent with this opinion.

## I. The Davenport Parental Responsibility Ordinance.

On July 21, 1999, the Davenport City Council adopted ordinance 9.56, entitled "Parental Responsibility." The ordinance's stated purpose is to "preserve the peace, safety, health and welfare of the citizens of Davenport, Iowa, and the city's visitors and guests." Davenport Mun. Code § 9.56.010 (2006). The ordinance further states its findings and remedial objectives as follows:

> The city council finds that there has been an increase in the number of criminal acts committed by juveniles. The city council further finds that those who bring children into the world, or those who assume a parenting role, but who fail to effectively teach, train, guide and control them, should be accountable to the community under the law. Those who need assistance and training should be aided; those who neglect their parenting duties should be encouraged to be more diligent, through civil sanctions, if necessary. This chapter should be construed to achieve these remedial

objectives by addressing situations where parents or guardians have failed or neglected to act responsibly or reasonably in the supervision of their minor children.

*Id.* There is no legislative history supporting passage of the ordinance beyond the minutes of the Davenport City Council's meetings, which only record the council members' votes.

The liability portions of the ordinance provide as follows:

**9.56.020 Definitions.**

The following words shall have the following meanings when used in this chapter, unless a different meaning is clear from context or usage.

A. "Parent" means a father, mother, legal guardian or any other person having or who has assumed the care, control or custody in the sense that the child lives with them and they look after that child, either by court order or on a voluntary basis.

B. "Minor" means any person who has not attained the age of eighteen years old.

C. "Adjudication" means that a juvenile court has entered a finding of fact that a minor has committed a delinquent act as defined by Iowa law.

D. "Informal adjustment" means a disposition of a juvenile investigation or case which results in a nonjudicial admission of guilt and nonjudicial agreement between juvenile court services and a minor. For purposes of this chapter a consent decree as provided for by Iowa law shall be deemed an informal adjustment.

E. "Occurrence" means a law enforcement agency has probable cause to believe a particular child engaged in a delinquent act and has filed a delinquency complaint with the court based upon such probable cause or has otherwise taken said child into custody.

**9.56.030 Parental responsibility.**

The parent of a minor shall not fail to exercise reasonable control over said minor.

**9.56.040 Parental duties.**

A. It is the duty of the parent of a minor child or minor children to exercise sufficient control over a said

minor(s) to prevent the minor(s) from committing any unlawful act in violation of federal law, state law or city ordinance. Any *occurrence* is a breach of this duty.

A second *occurrence* or an adjudication or the entry of an informal adjustment agreement involving a minor related to any unlawful act, and prior notification to the parent of the parental responsibility ordinance including notice of possible fines or penalties establishes a rebuttable presumption that the parent failed to exercise reasonable parental control of said parent's minor(s).

B. The presumption that a parent has failed to exercise reasonable parental control of a minor may be rebutted by evidence that establishes that the parent:

1. Kept illegal drugs and/or weapons out of the home; and kept legal weapons locked and inaccessible to minors.

2. Took reasonable and responsible efforts to require their minor to observe the curfew ordinance.

3. Took reasonable and responsible actions to insure that their minor regularly attended school sessions and limited school absences to situations approved by the parent.

4. Arranged adequate supervision of their minor child by a competent adult under circumstances when the parent was unable to personally supervise their child.

5. Took reasonable and responsible action to prevent, deter or report their minor child's involvement in unlawful activity in violation of federal law, state law or city ordinance; i.e., reported stolen property to police, turned in illegal or dangerous weapons to the police, prevented the minor's association with known juvenile delinquents.

6. Sought assistance from appropriate agencies prior to the adjudication or informal adjustment.

*Id.* §§ 9.56.020–.040 (emphasis added). Finally, the penalties the ordinance imposes increase with subsequent "occurrences:"

### 9.56.050   Penalties.

Any person who violates this chapter shall be guilty of a municipal infraction violation. A separate and distinct offense shall be regarded as being committed each day on which such person violates the provisions of this chapter.

A. Upon the occurrence of a first offense the city will issue the parent a warning letter which states that the parent is in violation of the parental responsibility ordinance together with a description of the nature of the parent's violation and a statement setting forth the fines and/or consequences of future violations.

B. Upon the occurrence of a second offense the parent will be ordered to attend and successfully complete a recognized course of instruction on parenting skills and/or techniques. A parent failing to successfully complete such course may be subject to contempt of court.

C. Upon the occurrence of a third or subsequent offense the penalty shall be a civil penalty in amount of at least one hundred dollars but not more than seven hundred fifty dollars and such other order, if any, that the court deems equitable.

*Id.* § 9.56.050.

## II. Background Facts and Proceedings.

Anne Hensler is a registered nurse living in Davenport. Anne has three children, Holly (fifteen), Nicholas (seventeen), and Peter (nineteen). Holly and Nicholas still live with Anne. Approximately fourteen years ago Anne was divorced, and since that time she has raised Holly, Nicholas, and Peter on her own with help from her mother and father. Anne's mother was especially helpful and was a substantial influence in the lives of Anne's children. Anne's children were well behaved and good students. Nicholas excelled in math and science, was an honor roll student, and was a member of the math club and science club. However, at the end of 2004 Anne's mother suddenly became terminally ill and died in December. Anne's children were very close to her, and her death shocked everyone.

Soon after the death of Anne's mother, kids at school began calling Nicholas "brainiac," and in response, Nicholas began to withdraw and did not want to go to school. Nicholas began talking less and started hanging out with different friends who Anne did not know. His grades

began to drop, and he stopped participating in sports, as well as the math and science clubs. He became strong willed and difficult to control. By this time, Nicholas was approximately 6′2″ tall and weighed approximately 200 pounds. Due to his size, his mother could not physically control him.

On November 30, 2007, Anne first learned Nicholas was smoking marijuana when the Davenport police caught him smoking marijuana with other minors in a school parking lot at 4:11 a.m. The police took Nicholas into custody for violation of the city's curfew ordinance and possession of a controlled substance. The school gave Nicholas a three-day suspension. The police referred him to the juvenile court due to this incident. In addition, the city issued Anne a "Parental Responsibility Ordinance Warning Letter" for her first violation of the ordinance. After this incident, Nicholas continued to smoke marijuana, sneak around, and cut class. The school would call Anne and tell her when Nicholas was missing from school periods, and she resorted to going to the school periodically to make sure he was in class. Anne also began reading parenting books to try to figure out how to cope with Nicholas's behavior.

On December 13 at approximately 9:51 p.m., Davenport police officers stopped a vehicle occupied by three minors for traffic violations and discovered two marijuana pipes and a baggie with marijuana residue in it. Nicholas was one of the passengers of the vehicle, and the police transported him to the station because he was being uncooperative at the scene. The police issued Nicholas citations for possession of a controlled substance and possession of drug paraphernalia. The police summoned Anne to the station and issued her a municipal citation for her second violation of the ordinance. Due to this incident, the police again referred Nicholas to the juvenile court system. Before the juvenile

court appointment took place, the Davenport police picked up Nicholas again on a third charge. Nicholas ran away from home and stayed with some of his friends after Anne attempted to strictly enforce her rules.

At the juvenile court appointment, the court ordered Nicholas to participate in a drug rehabilitation program and placed him on probation. Anne paid for the drug rehabilitation program. Anne also voluntarily took a parenting class entitled "Love and Logic" because she thought there was something she needed to learn. Upon taking the parenting class, Anne found she did all the things that were suggested to prevent juvenile delinquency.

Anne filed a motion to dismiss the municipal citation for her second violation of the ordinance. However, before the hearing on the motion to dismiss, Anne filed a civil rights petition, under 42 U.S.C. § 1983 (2006), against the City of Davenport for declaratory and injunctive relief. Anne claimed the ordinance violates her right to due process of law. Anne also claimed the enactment of the state juvenile laws preempted the city's power to enact the ordinance. The court stayed Anne's motion to dismiss until her civil rights petition was resolved.

In its ruling on Anne's civil rights claim, the district court concluded Anne failed to prove any legislative enactment of the state legislature preempted the ordinance. The court also rejected Anne's procedural due process challenge. The court did determine, however, that the ordinance violated Anne's substantive due process rights under the United States and Iowa Constitutions. Based on this civil rights violation, the court awarded attorney fees in favor of Anne's attorneys for $20,857.40.

The city appeals these rulings. Anne cross-appeals the attorney fee award.

### III. Issues.

The city contends the district court erred in holding the ordinance is a denial of substantive due process. Alternatively, the city claims if the ordinance denies substantive due process, the attorney fees awarded were excessive. In response to the city's arguments, Anne claims the ordinance violated her substantive due process rights. If the ordinance does not violate her substantive due process rights, she urges alternative grounds upon which we can affirm the district court's decision. First, she claims the ordinance violates her substantive due process rights by interfering with her fundamental right to parent. Next, she claims the juvenile laws contained in Iowa Code chapter 232 (2007) preempt the ordinance. Finally, she claims the ordinance contains an irrational and unfair presumption that if a minor violates the law, the court can presume the violation was a result of the parent's failure to exercise reasonable parental control over the minor. In her cross-appeal, Anne claims the attorney fee award was inadequate.

### IV. Scope of Review.

We review constitutional claims de novo. *Formaro v. Polk County*, 773 N.W.2d 834, 838 (Iowa 2009); *Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 258 (Iowa 2007). In doing so, we independently evaluate the totality of the circumstances. *State v. Shanahan*, 712 N.W.2d 121, 131 (Iowa 2006). The district court's findings of fact are not binding. *Id.* We do, however, give deference to those findings because the district court had the opportunity to assess the credibility of the witnesses. *Id.* Moreover, " 'statutes are cloaked with a presumption of constitutionality.' " *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005)

(quoting *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002)). If the statute is capable of being construed in more than one way, one of which is constitutional, we must adopt the constitutional construction. *Id.* Our review as to whether state law preempts the ordinance is a matter of statutory construction and is reviewable for correction of errors at law. *City of Davenport v. Seymour*, 755 N.W.2d 533, 537 (Iowa 2008).

### V. Substantive Due Process.

The district court found the ordinance to violate substantive due process as being overbroad on its face and in its application. In support of its ruling, the district court cited as authority *State v. Bower*, 725 N.W.2d 435, 443–44 (Iowa 2006), and *City of Chicago v. Morales*, 527 U.S. 41, 52, 119 S. Ct. 1849, 1857, 144 L. Ed. 2d 67, 77–78 (1999). Although the district court cited both the Iowa and United States Constitutions' Due Process Clauses in its ruling, *Morales* was decided under the United States Constitution. *Morales*, 527 U.S. at 53, 119 S. Ct. at 1857, 144 L. Ed. 2d at 78. While we decided *Bower* under the state and federal constitutions, we interpreted the Iowa Constitution claim as we would the United States Constitution claim because Bower did not suggest a reason to interpret the two constitutions differently. *Bower*, 725 N.W.2d at 441. Moreover, on appeal Anne does not cite the Iowa Constitution in her brief on this issue. Accordingly, we will decide this case only under the United States Constitution's Due Process Clause.[1]

---

[1]Even if we could find Anne argued and preserved an Iowa Constitution claim on appeal by citing a paragraph from the district court's decision, we would still decide the case by applying the general principles as outlined by the Supreme Court in interpreting the United States Constitution because neither party has advanced a standard for interpreting the due process clause under the Iowa Constitution differently from its Federal Constitution counterpart. *See State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009) (applying the Supreme Court's analysis to a cruel-and-unusual-punishment challenge under the Iowa Constitution when the defendant did not argue

We believe the district court's reliance on *Bower* and *Morales* is misplaced. *Bower* involved the interpretation of a harassment-of-a-public-official statute. *Bower*, 725 N.W.2d at 439–40. There, the statute in question criminalized conduct that willfully prevents or attempts to prevent any public officer or employee from performing the officer's or employee's duties. *Id.* at 441. The conduct in question involved defendant's speech and his close proximity to a police officer when the officer was investigating another incident. *Id.* at 439–40. In *Bower*, we interpreted the statute narrowly in order to prevent it from being overbroad. *Id.* at 444. In doing so, we relied on the following law from the Supreme Court:

> "First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked.' "

*Id.* at 441–42 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 2298–99, 33 L. Ed. 2d 222, 227–28 (1972)) (alterations in

---

for a different interpretive standard). We jealously guard it as our right and duty to differ from the Supreme Court, in appropriate cases, when construing analogous provisions in the Iowa Constitution. *State v. Olsen*, 293 N.W.2d 216, 219–20 (Iowa 1980). Thus, we always retain the exclusive prerogative to interpret the Iowa Constitution more restrictively than the Supreme Court has interpreted comparable language in the Federal Constitution. *Id.* at 219.

original). In *Bower*, basic First Amendment freedoms were involved. *Id.* at 443–44.

In *Morales*, the Supreme Court was dealing with an antiloitering ordinance. *Morales*, 527 U.S. at 45–46, 119 S. Ct. at 1854, 144 L. Ed. 2d at 74. There, the Supreme Court recognized "the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *Id.* at 52, 119 S. Ct. at 1857, 144 L. Ed. 2d at 77–78 (plurality opinion) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 2918, 37 L. Ed. 2d 830, 842 (1973)). In *Morales*, defendants convicted under the antiloitering law claimed the law inhibited their First Amendment rights. *Id.* at 52–53, 119 S. Ct. at 1857, 144 L. Ed. 2d at 78.

In the present case, the district court relied on the overbreadth doctrine that is applicable to laws infringing on a person's First Amendment rights to hold the ordinance invalid on its face. Anne does not claim the ordinance infringes on her First Amendment rights. Therefore, the overbreadth doctrine in *Bower* and *Morales* is not applicable to the ordinance.[2]

---

[2]The Supreme Court has recognized, however, the existence of another overbreadth doctrine that may invalidate a law on its face when First Amendment rights are not implicated. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697, 707–08 (1987). Under this doctrine, "the challenger must establish that no set of circumstances exists under which the [ordinance] would be valid." *Id.* There is a question whether *Salerno*'s overbreadth doctrine is still viable when First Amendment rights are not implicated. *Compare Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971–72 (9th Cir. 2003) (abiding by *Salerno*'s overbreadth doctrine), *with A Woman's Choice-E. Side Women's Clinic v. Newman*, 305 F.3d 684, 687 (7th Cir. 2002) (discussing the continued viability of *Salerno*). In her brief, Anne does not argue for another overbreadth doctrine other than the one used in *Bower* and *Morales* applying to laws infringing on First Amendment rights. Anne also failed to argue on appeal that the ordinance was "void for vagueness" or that it is enforced arbitrarily and discriminatorily so as to violate the Due Process Clause of the United States Constitution. Additionally, Anne abandoned her procedural due process

### VI. Whether the Ordinance Violates Anne's Due Process Rights by Interfering with Her Fundamental Right to Parent.

The Federal Constitution precludes deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process "prevents the government from interfering with 'rights implicit in the concept of ordered liberty.'" *Hernandez-Lopez*, 639 N.W.2d at 237 (quoting *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697, 708 (1987)). There are two stages to a substantive due process analysis. *State v. Groves*, 742 N.W.2d 90, 92 (Iowa 2007). The first stage requires us to determine the nature of the individual right involved. *Id.*; *accord Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447, 123 L. Ed. 2d 1, 16 (1993). The second stage involves the appropriate level of scrutiny to apply. *Groves*, 742 N.W.2d at 93.

If government action implicates a fundamental right, we apply a strict scrutiny analysis in which we determine if the government action infringing the fundamental right is narrowly tailored to serve a compelling government interest. *Seering*, 701 N.W.2d at 662. Alternatively, if a fundamental right is not implicated, the statute need only survive the rational-basis test, which requires us to consider "whether there is 'a reasonable fit between the government interest and the means utilized to advance that interest.'" *Id.* (quoting *Hernandez-Lopez*, 639 N.W.2d at 238); *accord Flores*, 507 U.S. at 305, 113 S. Ct. at 1448–49, 123 L. Ed. 2d at 18.

---

argument in this appeal. Finally, she did not argue any due process claim under the Iowa Constitution. Accordingly, we decline to address these issues. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 102–03 (Iowa 2008) (holding a party fails to preserve error when that party fails to advance any argument or cite any authority in his or her brief to support a claim).

Anne claims the ordinance infringes on her fundamental right to make her own parenting decisions without undue coercion or interference from the state. The city claims the ordinance does not infringe upon the parent-child relationship but instead simply informs the parent that warning signs exist and the parent should seek some advice or help.

When an alleged right is not specifically and constitutionally enumerated as fundamental, neither this court nor the Supreme Court has created a clear test for determining whether the claimed right is a fundamental right. *In re Det. of Cubbage*, 671 N.W.2d 442, 447 (Iowa 2003). Nevertheless, only rights and liberties that are objectively " 'deeply rooted in this Nation's history and tradition' " and " 'implicit in the concept of ordered liberty' " qualify as fundamental. *Chavez v. Martinez*, 538 U.S. 760, 775, 123 S. Ct. 1994, 2005, 155 L. Ed. 2d 984, 999 (2003) (plurality opinion) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S. Ct. 2258, 2268, 138 L. Ed. 2d 772, 787–88 (1997)). Moreover, any asserted fundamental liberty interest must be carefully described so that we can proceed with the correct analysis. *Glucksberg*, 521 U.S. at 721, 117 S. Ct. at 2268, 138 L. Ed. 2d at 788; *accord Seering*, 701 N.W.2d at 663.

One of the oldest fundamental liberty interests consistently recognized by the Supreme Court is the interest of parents in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49, 56 (2000); *accord Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394, 71 L. Ed. 2d 599, 606 (1982) (recognizing that personal choice in matters of family life is a fundamental liberty interest); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2159–60, 68 L. Ed. 2d 640,

649–50 (1981) (finding a parent's right to the companionship, care, custody, and management of his or her children is an important interest); *Parham v. J.R.*, 442 U.S. 584, 602–04, 99 S. Ct. 2493, 2504–05, 61 L. Ed. 2d 101, 118–19 (1979) (recognizing the concept of family as a unit with broad parental authority over minor children); *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 554–55, 54 L. Ed. 2d 511, 519 (1978) (recognizing that the relationship between parent and child is constitutionally protected); *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S. Ct. 1932, 1935–36, 52 L. Ed. 2d 531, 537 (1977) (citing a host of Supreme Court cases that have consistently acknowledged the state cannot enter the private realm of family life); *Wisconsin v. Yoder*, 406 U.S. 205, 232–34, 92 S. Ct. 1526, 1541–42, 32 L. Ed. 2d 15, 35 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children."); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212–13, 31 L. Ed. 2d 551, 558–59 (1972) (finding the right to raise one's children as "essential"); *Ginsberg v. New York*, 390 U.S. 629, 639, 88 S. Ct. 1274, 1280, 20 L. Ed. 2d 195, 203–04 (1968) (stating "constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society"); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 442, 88 L. Ed. 645, 652 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35, 45 S. Ct. 571, 573, 69 L. Ed. 1070, 1078 (1925) (recognizing parents have a liberty interest in directing the upbringing and education of their children); *Meyer v. Nebraska*, 262 U.S.

390, 399–400, 43 S. Ct. 625, 626–27, 67 L. Ed. 1042, 1045 (1923) (finding the liberty protected by the Due Process Clause includes the right of the individual to establish a home and bring up children). Therefore, if the ordinance infringes on Anne's fundamental right to exercise care, custody, and control over her son, we must apply strict scrutiny. *Hernandez-Lopez*, 639 N.W.2d at 238. Accordingly, we must examine the contours of this fundamental right in order to determine whether the ordinance infringes upon it.

The determination of whether the fundamental parental right to exercise care, custody, and control over children has been infringed must be determined on a case-by-case basis. *Troxel*, 530 U.S. at 95–96, 120 S. Ct. at 2076, 147 L. Ed. 2d at 75 (Kennedy, J., dissenting). Moreover, while this fundamental right has been broadly stated, "the contours of the right are not completely amorphous." *See, e.g., Dutkiewicz v. Dutkiewicz*, 957 A.2d 821, 832–33 (Conn. 2008) (analyzing the contours of the fundamental parental right to exercise care, custody, and control over a child). Every case that has implicated this fundamental right has a commonality:

> All of the cases in which the United States Supreme Court . . . [has] concluded that the parental right to exercise care, custody and control over children was implicated, involved situations in which the state intervened and substituted its decision making for that of the parents. The result is that a parent's decision with respect to the care, custody and control of his or her child cannot be overridden by the state in the absence of a showing that the parent is unfit or that the parent's decision will jeopardize the health or safety of the child, or will have a potential to impose significant social burdens.

*Id.* at 833 (emphasis removed). Thus, for a statute or ordinance to infringe on this fundamental parental right, "the state must in some way attempt to override or at least limit the decision of a parent with respect

to the care, custody and control over his or her child." *Id.* (emphasis removed); *see also* S. Randall Humm, *Criminalizing Poor Parenting Skills as a Means to Contain Violence by and Against Children*, 139 U. Pa. L. Rev. 1123, 1143 (1991) ("A law that allows the state to review virtually every aspect of the parent's supervision over the child is inconsistent with the . . . deference [that the Supreme Court has assigned to] parents in matters involving child rearing.").

In other words, the power of the state must improperly intrude into the parent's decision-making authority over his or her child for there to be an infringement of this fundamental parental right, triggering strict scrutiny. *Dutkiewicz*, 957 A.2d at 833; *see, e.g.*, *Troxel*, 530 U.S. at 67, 120 S. Ct. at 2060–61, 147 L. Ed. 2d at 57–58 (noting the parent wanted to limit third-party visitation, the state did not); *Moore*, 431 U.S. at 496–97, 97 S. Ct. at 1934, 52 L. Ed. 2d at 535–36 (noting the parent wanted to live with son and two grandsons in violation of housing ordinance); *Yoder*, 406 U.S. at 207–08, 92 S. Ct. at 1529–30, 32 L. Ed. 2d at 20–21 (noting the parent wanted to give children an Amish education, and the state wanted them to attend public school); *Pierce*, 268 U.S. at 530–31, 45 S. Ct. at 572, 69 L. Ed. at 1076 (noting the state wanted children to attend public school); *Meyer*, 262 U.S. at 396–97, 430 S. Ct. at 626, 67 L. Ed. at 1044 (noting the state sought to prohibit parents from allowing their children to learn a foreign language before the eighth grade); *accord Santi v. Santi*, 633 N.W.2d 312, 318 (Iowa 2001) (noting the parent wanted to limit third-party visitation, the state did not); *Olds v. Olds*, 356 N.W.2d 571, 574 (Iowa 1984) (same).

Furthermore, we have stated, "[b]oth [this court's] precedents and those of the Supreme Court indicate that an alleged infringement on a familial right is unconstitutional *only* when an infringement has a direct

and substantial impact on the familial relationship." *Seering*, 701 N.W.2d at 663 (emphasis added). Thus, for the ordinance to infringe upon Anne's fundamental parental right, it must directly and substantially intrude into her parental decision-making authority over her child.

However, it is important to note the fundamental parental right to exercise care, custody, and control over children is not absolute. The state has a legitimate interest to promote the public welfare or the well-being of the child. *City of Panora v. Simmons*, 445 N.W.2d 363, 369–70 (Iowa 1989). Under the doctrine of *parens patriae*, the state may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. *Prince*, 321 U.S. at 166, 64 S. Ct. at 442, 88 L. Ed. at 652. Consequently, when the child's welfare is threatened, the state can use a wide range of powers to limit parental freedom and authority. *Id.* at 167, 64 S. Ct. at 442, 88 L. Ed. at 653. Therefore,

> "[i]n cases in which harm to the physical or mental health of the child or to the public safety, peace, order, or welfare is demonstrated, these legitimate state interests may override the parents' qualified right to control the upbringing of their children."

*Simmons*, 445 N.W.2d at 369–70 (quoting *Bykofsky v. Borough of Middletown*, 401 F. Supp. 1242, 1264 (M.D. Pa. 1975)).

Here, the city claims its interest advanced by the ordinance is to "preserve the peace, safety, health and welfare of the citizens of Davenport, Iowa, and the city's visitors and guests." Davenport Mun. Code § 9.56.010. Clearly, the city has a strong interest in protecting the public from juvenile delinquency. The ordinance does not dictate to parents an overall plan for the discipline, control, or supervision of

minors. *Simmons*, 445 N.W.2d at 370. Instead, upon a first "occurrence" it gives the parent notice of their child's alleged delinquency, upon a second "occurrence" it requires the parent to successfully complete a parenting class to learn skills the parent may or may not voluntarily implement to combat their child's delinquency, and finally upon a third "occurrence" the ordinance imposes sanctions on the parent. Davenport Mun. Code § 9.56.050. While the ordinance does attempt to inform parents about their child's delinquency, provide skills for combating delinquency, and ultimately imposes sanctions on parents for their child's continued delinquency, we cannot say the city has improperly intervened and substituted its decision making for that of the parent. Therefore, the ordinance does not intrude directly and substantially into a parent's parental decision-making authority, but instead only minimally impinges on a parent's fundamental right to direct the upbringing of his or her child. Consequently, the ordinance does not trigger strict scrutiny by infringing upon Anne's fundamental right to exercise care, custody, and control over her child. Accordingly, the district court correctly determined the proper level of scrutiny to apply in this case is the rational-basis test.

When a fundamental right is not implicated, the ordinance need only survive the rational-basis test. *Seering*, 701 N.W.2d at 662. The rational-basis test requires us to consider "whether there is 'a reasonable fit between the government interest and the means utilized to advance that interest.'" *Id.* (quoting *Hernandez-Lopez*, 639 N.W.2d at 238); *accord Flores*, 507 U.S. at 303, 305, 113 S. Ct. at 1448–49, 123 L. Ed. 2d at 18. Under this level of scrutiny, the legislature need not employ the best means of achieving a legitimate state interest. *Sanchez v. State*, 692 N.W.2d 812, 818 (Iowa 2005). As long as the means " 'rationally

advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods . . . that we, as individuals, perhaps would have preferred.' " *Id.* (quoting *Schweiker v. Wilson*, 450 U.S. 221, 235, 101 S. Ct. 1074, 1083, 67 L. Ed. 2d 186, 198 (1981)). Moreover, while the rational-basis level of scrutiny is deferential to legislative judgment, it is not a toothless standard of review. *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 9 (Iowa 2004); *accord Mathews v. de Castro*, 429 U.S. 181, 185, 97 S. Ct. 431, 434, 50 L. Ed. 2d 389, 394 (1976).

Under the rational-basis test, we first must determine whether the ordinance serves a legitimate governmental interest. *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 7. Moreover, "the claimed state interest must be '*realistically* conceivable.' " *Id.* (emphasis in original) (quoting *Miller v. Boone County Hosp.*, 394 N.W.2d 776, 779 (Iowa 1986)). In this case, there is no doubt the city's interest in protecting the community from the threat of juvenile delinquency is legitimate. Thus, the only remaining issue is whether the ordinance is rationally related to this legitimate governmental interest. Parental responsibility laws, such as the ordinance in this case, are based on the fairly simple rationale that, if the state imposes sanctions or threatens to impose sanctions on the parent for the delinquent acts of his or her child, the parent will exercise better control and supervision over the child, thereby reducing or eliminating future acts of juvenile delinquency by that child.

When a child resides with his or her parent, the parent is probably in the best position to control the child's behavior. Thus, there is a reasonable fit between the government's interest to curb delinquent acts of a child and the requirement that a parent should exercise reasonable control over his or her child. For this reason, the ordinance does not

violate Anne's due process rights by interfering with her fundamental right to parent.

**VII.    Whether the Juvenile Laws Contained in Iowa Code Chapter 232 Preempt the Ordinance.**

In 1968, the Iowa Constitution was amended to provide municipal governments the limited power of legislative home rule.  Iowa Const. art. III, § 38A.  Our home rule amendment allows the legislature to retain the unfettered power to forbid a municipality from exercising police powers, even over those matters traditionally thought to involve local matters. *Seymour*, 755 N.W.2d at 538.  However, "as long as an exercise of police power over local affairs is not 'inconsistent with the laws of the general assembly,' municipalities may act without express legislative approval or authorization." *Id.* (quoting Iowa Const. art. III, § 38A).  The purpose of the home rule amendment was to give local government the power to pass legislation over its local affairs subject to the superior authority of the legislature.  *Goodell v. Humboldt County*, 575 N.W.2d 486, 492 (Iowa 1998).  To determine whether municipal action is permitted or prohibited by the legislature, courts have developed the doctrine of preemption. *Seymour*, 755 N.W.2d at 538.  The preemption doctrine dictates that municipalities cannot act if the legislature has directed otherwise.  *Id.* When the legislature exercises its authority in an area, legislative power trumps the authority of local government to do the same.  *Id.*  We have recognized three types of preemption—express preemption, implied-conflict preemption, and implied-field preemption.  *Id.* at 538–39; *Goodell*, 575 N.W.2d at 492–93.  We will examine each in turn.

**A.  Express Preemption.**  Express preemption applies when the legislature has explicitly prohibited local action in a given area. *Seymour*, 755 N.W.2d at 538; *Goodell*, 575 N.W.2d at 492.  Anne argues

the language contained in Iowa Code section 232.8, that the Iowa juvenile court has "exclusive original jurisdiction in proceedings concerning a child who is alleged to have committed a delinquent act," expressly preempts the ordinance. Iowa Code § 232.8(1)(*a*). The city claims there is no provision in the Iowa Code that expressly preempts the ordinance. By its terms, the jurisdictional section cited by Anne does not explicitly prohibit the imposition of sanctions by a city on a parent based on a child's alleged delinquency. Therefore, the language contained in Iowa Code section 232.8 does not expressly preempt the ordinance.

**B.  Implied-Conflict Preemption.**  Implied-conflict preemption occurs when a local ordinance prohibits an act permitted by a statute or permits an act prohibited by a statute. *Seymour*, 755 N.W.2d at 538; *Goodell*, 575 N.W.2d at 493.

> The theory of this branch of implied preemption is that even though an ordinance may not be expressly preempted by the legislature, the ordinance cannot exist harmoniously with a state statute because the ordinance is diametrically in opposition to it.

*Seymour*, 755 N.W.2d at 538. For conflict preemption to apply, the local ordinance must be "irreconcilable" with state law, meaning the conflict must be "obvious, unavoidable, and not a matter of reasonable debate." *Id.* at 539.

In this case, Anne argues the ordinance is inconsistent with the Iowa juvenile justice code because it sets up a local court proceeding that is less protective and less responsive to due process and the needs of families, which shadows the juvenile court system. Moreover, Anne argues the ordinance may cause the juvenile and local courts to require the parent to engage simultaneously in conflicting or competing interests. We disagree.

The ordinance in question no more conflicts with the juvenile justice court system than does Iowa Code section 613.16, which imposes vicarious liability upon parents for the tortious damages to persons or property caused by their children. *See* Iowa Code § 613.16. The ordinance does not attempt to lower the due process standards of the juvenile court, but instead holds parents liable for the delinquency of their children. While the juvenile justice system focuses on the child, the ordinance focuses on the parental control exercised by the parent over the child. Thus, the ordinance and the juvenile justice system serve two different purposes, which do not obviously and unavoidably conflict.

**C. Implied-Field Preemption.** Implied-field preemption occurs when the legislature has "so covered a subject by statute as to demonstrate a legislative intent that regulation in the field is preempted by state law." *Seymour*, 755 N.W.2d at 539; *see also Goodell*, 575 N.W.2d at 493. However, extensive regulation in a certain field is not enough. *Seymour*, 755 N.W.2d at 539. Instead, "[i]n order to invoke the doctrine of field preemption, there must be some clear expression of legislative intent to preempt a field from regulation by local authorities, or a statement of the legislature's desire to have uniform regulations statewide." *Id.*; *see also Goodell*, 575 N.W.2d at 493, 499–500 (recognizing the need for a high degree of legislative expression before this court will find subject-wide preemption). Therefore, "[t]here must be persuasive concrete evidence of an intent to preempt the field in the language that the legislature actually chose to employ." *Seymour*, 755 N.W.2d at 539.

Anne argues the legislative pronouncement that the Iowa juvenile court has "exclusive original jurisdiction in proceedings concerning a child who is alleged to have committed a delinquent act" also evidences

the legislature's intent to preempt this field and provide uniform regulation. Iowa Code § 232.8(1)(*a*). Thus, Anne claims Iowa's juvenile justice code provides a comprehensive scheme for dealing with allegedly delinquent children and their families and preempts this field from local regulation. Again, we disagree.

The ordinance does not attempt to exercise jurisdiction over the child, but instead merely imposes sanctions upon a parent whose child has allegedly committed a delinquent act. Nowhere in Iowa's comprehensive juvenile justice code does the legislature clearly indicate a legislative intent to preempt this field or a desire to provide uniform regulations for imposing sanctions on parents for their children's delinquency. *See* Iowa Code §§ 232.1–.196. Consequently, Anne has failed to produce "persuasive concrete evidence of an intent to preempt the field in the language that the legislature actually chose to employ." *Seymour*, 755 N.W.2d at 539.

Therefore, we find Anne has failed to establish the ordinance has been expressly or impliedly preempted by Iowa's juvenile justice code.

**VIII. Whether the Ordinance Contains an Irrational and Unfair Presumption.**

Anne claims we can uphold the district court decision by finding the ordinance contains an irrational and unfair presumption that, if a minor violates the law, the court can assume the violation was a result of the parent's failure to exercise reasonable parental control of the minor. In analyzing this claim, we start with the principle that a person who violates the ordinance commits a municipal infraction. Davenport Mun. Code § 9.56.050. A municipal infraction is a civil offense. Iowa Code § 364.22(1). Thus, our analysis requires us to review the appropriate civil law precedents to determine if we can uphold the district court

decision by finding the ordinance contains an irrational and unfair presumption.

A presumption in a civil case violates the Due Process Clause of the United States Constitution if it is arbitrary or operates to deny a fair opportunity to rebut it. *W. & A.R.R. v. Henderson*, 279 U.S. 639, 642, 49 S. Ct. 445, 447, 73 L. Ed. 884, 888 (1929); *Calkins v. Adams County Coop. Elec. Co.*, 259 Iowa 245, 253, 144 N.W.2d 124, 128–29 (1966).[3] The reason for this rule is simple—"[l]egislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property." *W. & A.R.R.*, 279 U.S. at 642, 49 S. Ct. at 447, 73 L. Ed. at 888.

In order for a person to violate the ordinance, he or she must fail to "exercise sufficient control over a said minor(s) to prevent the minor(s) from committing any unlawful act in violation of federal law, state law or city ordinance." Davenport Mun. Code § 9.56.040(A). The standard for finding that a parent violated the ordinance is negligence. *Id.* The ordinance creates a rebuttable presumption "that the parent failed to exercise reasonable parental control of said parent's minor(s)" after

> A second occurrence or an adjudication or the entry of an informal adjustment agreement involving a minor related to any unlawful act, and prior notification to the parent of the parental responsibility ordinance including notice of possible fines or penalties . . . .

*Id.* The ordinance defines an "occurrence" to mean "a law enforcement agency has probable cause to believe a particular child engaged in a delinquent act and has filed a delinquency complaint with the court

---

[3]Anne does not claim or make an argument under the Iowa Constitution in her brief when she claims the ordinance contains an irrational and unfair presumption that if a minor violates the law, the court can assume the violation was a result of the parent's failure to exercise reasonable parental control of the minor. Therefore, we will only analyze this issue under the Federal Constitution.

based upon such probable cause or has otherwise taken said child into custody." *Id.* § 9.56.020(E). The ordinance allows the parent to rebut the presumption created by the ordinance. *Id.* § 9.56.040(B). Without this presumption, the city has the burden to prove by clear, satisfactory, and convincing evidence that the parent failed to exercise reasonable parental control of his or her minor, and the second "occurrence" was caused by the parent's failure to exercise reasonable parental control. Iowa Code § 364.22(5)(*b*). In other words, upon a second "occurrence," a parent is presumed negligent. Because the second "occurrence" is the fact used to presume negligence, the ordinance's presumption also presumes causation—that a parent's negligence in controlling his or her child is the cause of the child's delinquency.

In *Calkins*, we were confronted with an analogous presumption. 259 Iowa at 248, 144 N.W.2d at 125. There, the plaintiff was injured when his horse came in contact with a guy wire, and he was thrown from his horse. *Id.* at 251, 144 N.W.2d at 127. At the time of the injury, the applicable statute provided:

> "In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury, but this presumption may be rebutted by proof."

*Id.* at 248, 144 N.W.2d at 125 (quoting Iowa Code § 489.15 (1962)). In construing the presumption, the court noted by inferring negligence from the injury, the presumption not only presumed negligence but also presumed causation. *Id.* at 252, 144 N.W.2d at 128. Although the presumption of negligence was rebuttable, we held the presumption violated the defendant's due process rights because the presumption was arbitrary and had no reasonable relationship to the facts of the case. *Id.* at 253, 144 N.W.2d at 129.

Our holding in *Calkins* is consistent with the well-settled law that in an ordinary negligence action the mere fact an incident occurred does not mean a party is negligent. *Armbruster v. Gray*, 225 Iowa 1226, 1230, 282 N.W. 342, 344 (1938). Generally, we do not allow a fact finder to infer negligence from an injury because injuries can happen without any negligence. *Harvey v. Borg*, 218 Iowa 1228, 1232, 257 N.W. 190, 193 (1934). Thus, it is irrational to allow a fact finder to use the mere occurrence of an incident to presume a person was negligent and the cause of the incident. *Id.* ("It is universally agreed that no inference of negligence arises from the mere fact that a collision occurred.").

We believe the presumption contained in Davenport's ordinance is just as arbitrary and irrational as the presumption in an ordinary negligence case. There can be many causes for a child to commit an "occurrence" under the ordinance. As one authority notes:

> Experts fail to agree on the causes of delinquency. Its cause is as complex as poverty, drug abuse, or any other social problem. . . . Even when several experts do agree on causation, they disagree about solutions or prevention methods.
>
> Experts who identify a dysfunctional family as a primary reason for delinquent behavior often cite factors other than lack of discipline as a cause. For example, poverty and family disruption (divorce, death in the family etc.), both outside the reach of parenting classes, may contribute to delinquent behavior. Though most laws presume parents of delinquents are not "heavy handed" enough, several studies indicate that strict discipline increases delinquent behavior.

Michelle L. Casgrain, *Parental Responsibility Laws: Cure for Crime or Exercise in Futility?*, 37 Wayne L. Rev. 161, 173–74 (1990); *accord* James Herbie DiFonzo, *Parental Responsibility for Juvenile Crime*, 80 Or. L. Rev. 1, 45 (2001) (finding the biological and social factors that may lead a child to commit delinquent acts are profoundly intertwined). Other

authorities agree that family coupled with the interrelated forces of school, housing, recreation, community life, employment, and the juvenile justice system itself influence a juvenile toward or away from delinquency. Penelope D. Clute, *"Parental Responsibility" Ordinances—Is Criminalizing Parents When Children Commit Unlawful Acts a Solution to Juvenile Delinquency?*, 19 Wayne L. Rev. 1551, 1576–77 (1973); *accord* Linda A. Chapin, *Out of Control? The Uses and Abuses of Parental Liability Laws to Control Juvenile Delinquency in the United States*, 37 Santa Clara L. Rev. 621, 670–71 (1997) ("Most current researchers concede that the relationship between the family and juvenile delinquency is complex, and that a 'bad' parent is not the sole cause of a 'bad' child."); Christine T. Greenwood, *Holding Parents Criminally Responsible for the Delinquent Acts of Their Children: Reasoned Response or "Knee-Jerk Reaction"?*, 23 J. Contemp. L. 401, 411 (1997) (stating, although there is a dispute over the exact degree, most researchers agree that certain functions and characteristics of the family are one of the factors that cause juvenile delinquency); Kathryn J. Parsley, *Constitutional Limitations on State Power to Hold Parents Criminally Liable for the Delinquent Acts of Their Children*, 44 Vand. L. Rev. 441, 468 (1991) (noting other factors contributing to juvenile delinquency include social class, educational level, urbanization, living conditions, social instability, drug abuse, school failure, inadequate family relationships, antisocial values, child abuse, and association with delinquent peers). Consequently, while the family might have an effect on juvenile delinquency, it may not be a factor contributing to juvenile delinquency in a specific case.

Therefore, allowing a fact finder to presume negligence and causation based on the happening of an "occurrence," rather than

finding negligence and causation based on the facts, is arbitrary and irrational in light of the multiple factors that can cause the "occurrence," as defined by the statute. Long ago, we realized that things happen absent a person's negligence. For this reason, we do not permit a fact finder to presume a person's negligence merely because some incident occurred. Accordingly, we hold the provisions of the ordinance creating the presumption are arbitrary and irrational and violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Our holding does not mean the entire ordinance is void. Our constitutional duty requires us to preserve as much of the ordinance as possible within constitutional restraints. *Fed. Land Bank of Omaha v. Arnold,* 426 N.W.2d 153, 157–58 (Iowa 1988). When possible, our duty requires us to declare unconstitutional only that portion of the statute that is found to violate the Constitution. *Id.* It is appropriate for us to sever unconstitutional provisions from constitutional portions of a statute if the severance does not substantially impair the enactment's legislative purpose, the enactment remains capable of fulfilling the apparent legislative intent, and the remaining portion of the enactment can be given effect without the invalid provision. *Am. Dog Owners Ass'n, Inc. v. City of Des Moines*, 469 N.W.2d 416, 418 (Iowa 1991). The Davenport Municipal Code also recognizes this concept of severance by providing:

> If any section, subsection, sentence, clause or phrase of this code is for any reason held to be invalid or unconstitutional, such decision shall not affect the validity of the remaining portions of this code. The council hereby declares that it would have passed this code, and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases had been declared invalid or unconstitutional, then the original ordinance or ordinances shall be in full force and effect.

Davenport Mun. Code § 1.01.100. Thus, we cannot presume the city council intended its ordinances to be treated as a whole. *Clark v. Miller*, 503 N.W.2d 422, 425 (Iowa 1993).

We find the provisions of section 9.56.040 of Davenport's parental responsibility ordinance dealing with the presumption that a parent failed to exercise reasonable parental control of his or her child upon a second "occurrence" can be severed from the rest of the ordinance and strike those provisions from the ordinance. The Iowa Code requires a city to prove a violation of a municipal infraction by clear, satisfactory, and convincing evidence. Iowa Code § 364.22(5)(*b*). Accordingly, for the city to prove a first, second, or subsequent violation of the ordinance, it must prove by clear, satisfactory, and convincing evidence that a parent failed to exercise reasonable parental control of his or her minor, and the "occurrence" was caused by the parent's failure to exercise reasonable parental control.

### IX. Attorney Fee Award.

The district court awarded attorney fees based on its finding that the entire ordinance was unconstitutional. On appeal, we found the presumption of failure to exercise reasonable parental control under section 9.56.040 of the ordinance to be unconstitutional and severed the unconstitutional portion of the ordinance from the remainder of the ordinance. The court, in its discretion, may award reasonable attorney fees to a prevailing party in a civil rights action. 42 U.S.C. § 1988(*b*). One of the factors to be considered when awarding attorney fees under 42 U.S.C. § 1988 is the level of the prevailing party's success in the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 430, 103 S. Ct. 1933, 1938, 76 L. Ed. 2d 40, 48 (1983). Therefore, we must vacate the award of attorney fees and remand the case to the district court to determine

the proper award of attorney fees, if any, considering the level of the prevailing party's success in this litigation.

## X. Disposition.

We hold the presumption of failure to exercise reasonable parental control under section 9.56.040 of the Davenport Parental Responsibility Ordinance is unconstitutional and sever the unconstitutional portion of the ordinance from the remainder of the ordinance. Therefore, we must affirm in part and reverse in part the judgment of the district court. We also vacate the attorney fee award and remand the case to the district court to reconsider its award of attorney fees, taking into consideration the prevailing party's level of success in the litigation as one of the factors in making its award. Accordingly, we remand the case to the district court to enter judgment consistent with this opinion.

**APPEAL AFFIRMED IN PART, REVERSED IN PART, AND REMANDED; CROSS-APPEAL REVERSED AND REMANDED.**